BENJAMIN GOULD, Respondent, *v.* THE CAYUGA COUNTY NATIONAL BANK.OF AUBURN et al., Appellants.

Although a party who has been induced to enter into a contract by false representations may not be able to rescind on discovery of the fraud, he is not thereby deprived of all remedy ; he may keep what he has received and sue to recover damages for the fraud, or may commence an action in equity to rescind and for equitable relief, offering in his complaint to restore, in case he is not entitled to retain, what he has received. Plaintiff, having a claim against defendants which was in dispute, was in-

duced, by false representations on their part as to facts affecting the valid-
ity of the claim, to compromise the same for the sum of $25,000 which
was paid to him. In an action brought to recover damages for the fraud,
*held,* that such fraud related to the subject-matter of the compromise
agreement, *i. e.,* the money paid; and that he was entitled to recover ; that
the damages sustained were not the balance of the claim deducting the
sum paid, but such sum as would with the sum paid represent the fair
value of the claim considered as a disputed one, *i. e.,* such additional sum
as plaintiff could reasonably have demanded and the defendants allowed
had there been no fraud.

(Argued May 4, 1885 ; decided June 9, 1885.)

APPEAL from order of the General Term of the Supreme
Court, in the fifth judicial department, entered upon an order
made October 31, 1884, which granted a new trial.    Plaintiff
was nonsuited at the ·Circuit ; exceptions were ordered to be
heard at first instance at General Term.

This action was brought to recover damages sustained by
plaintiff by means of false representations on the part of de-
fendants.

Plaintiff had on deposit for safe-keeping, with defendant,
the Cayuga County National Bank, a package containing certain
United States bonds; these bonds plaintiff loaned to said bank
on receipt of an agreement on its part guaranteed by the other
defendant that the bank would replace the securities before in-
terest became due thereon.    Plaintiff thereafter on applying for
his bonds was advised that there were none on deposit belong-
ing to him.    Plaintiff thereupon made a claim under the agree-
ment for a return of the bonds.    Negotiations were had relative to
the matter, which resulted in a compromise, by which the bank
in March, 1873, paid to the plaintiff $25,000, in discharge of
all of its liabilities growing out of that transaction, and Mr.
Gould executed a release in writing, not under seal, in terms
releasing and discharging the bank from all liability or claim,
by reason of any matter or thing connected with the loan of
the bonds.    The fraud imputed by the plaintiff is this: that
before and at the time of the settlement, the officers of the
bank stated and represented to him that the bank had in fact

replaced bonds of the same class of those loaned, by deposit-
ing the same in its vault, and that such representations were
false and untrue, as the bonds were never replaced as repre-
sented.

Plaintiff subsequently brought an action for a breach of
the agreement to return the bonds, but was defeated therein
by reason of the compromise and release. (See 86 N. Y. 75.)

Further facts are stated in the opinion.

*William F. Cogswell* for appellants. The plaintiff could
not maintain this action because it was, both in substance and
in form, an attempt to disaffirm the compromise entered into
with the parties without complying with the fundamental con-
dition of first restoring to the bank the consideration which he
had received upon such compromise. (86 N. Y. 75, 80 ; *Lee* v. *L.
& Y.R. R. Co.*, L. R., 6 Ch. App. 527 ; Story's Eq. Pl., §§ 31,
676, 677, 678.) To sustain an action for fraud founded upon rep-
resentations made by the defendant, it must be made to appear
that he believed, or had reason to believe at the time he made
them, that the representations were false, or that without knowl-
edge he assumed or intended to convey the impression that he
had actual knowledge of their truth, and that plaintiff relied upon
them to his injury. ( *Wakeman* v. *Daily*, 51 N. Y. 27 ; *Meyer*
v. *Amidon*, 45 id. 169 ; *Oberlander* v. *Speiss*, id. 175 ; *Craig*
v. *Ward*, 3 Keyes, 387.)

*H. V. Howland* for respondent. One situated like the
plaintiff can rescind by tendering or restoring what he has re-
ceived and then commence his action. He may keep what he
has received and sue to recover damages for the fraud ; or, he
may commence an action in equity to rescind and for equitable
relief, offering in his complaint to restore, in case he is not en-
titled to retain what he has received. If the party is not will-
ing to restore what he has received, he is confined to one of
the last two remedies. (*Gould* v. *Cayuga, etc., Bk.*, 21 Hun,
303 ; 86 N. Y. 84 ; *Lexow* v. *Julian*, 6 N. Y. Weekly Dig. 508 ;
*Brown* v. *Mandeville*, 29 Hun, 42 ; affirmed, Ct. of App., 18

Weekly Dig. 452; *Curtiss* v. *Howell*, 39 N. Y. 215; *Cobb* v. *Hatfield*, 46 id. 535; *Sinclair* v. *Neill*, 3 N. Y. Sup. Ct. 74.) In an action at law, based upon fraud or deceit, the court has no power to apply any limit, except the statute of limitations. (*Whitney* v. *Thatcher*, 117 Mass. 527.) The plaintiff in an action for the alleged fraud, in cases where the party either cannot or does not choose to restore what he has received, may allow the fraudulent contract to stand unrevoked or unrescinded, and take his legal remedy for the damages he has suffered by reason of the fraud. (*Gould* v. *Cayuga Co. Nat. Bk.*, 21 Hun, 293; 86 N. Y. 75; *Cobb* v. *Hatfield*, 46 id. 533; *Curtiss* v. *Howell*, 39 id. 211; *Pullman* v. *Alley*, 53 id. 637; *Sinclair* v. *Neill*, 3 N. Y. Sup. Ct. 74.)

FINCH, J. Upon the argument of this appeal the learned counsel for the appellants expressed a regret that he had been unable to impress upon the General Term the precise and accurate point which he desired to make. The suggestion warns us to study the argument now made attentively and not to miss its force and direction, and to endeavor to hold firmly for analysis and examination the distinction sought to be drawn, however it may seem to us somewhat subtle and narrow.

Assuming for the purposes of the discussion that a fraud existed, the argument upon both sides proceeds for a long distance upon parallel lines, and without divergence. The previous action between the parties was upon the contract by which the bank and Beardsley as its surety agreed to return to Gould his government bonds loaned temporarily to the corporation. Whether these bonds or their equivalents had been actually returned to Gould so as to have become his property on special deposit at the bank before the embezzlement of the cashier, and so which party had been robbed, was the precise fact in controversy. The defense was an agreement of compromise, and the reply that such agreement was void for fraud. We decided that the action was upon the original obligation, which was extinguished by the compromise agreement so long as the latter stood; that while it might have been rescinded on

the ground of fraud, it could not be so rescinded without a return of the $25,000, received upon it; and since that had not been tendered the compromise stood, and operated to extinguish the original obligation.   But that one guilty of a fraud obtained complete immunity because time or circumstance had made impossible a restoration of the parties to their original condition seemed such a reproach to the law that we added a statement of the settled and undoubted rule that though one situated like the plaintiff may not be able to rescind he still has ample remedies: "He may keep what he has received and sue to recover damages for the fraud; or he may commence an action in equity to rescind and for equitable relief, offering in his complaint to restore in case he is not entitled to retain what he has received." (86 N. Y. 84.) . The language thus used accurately reproduced an early statement of the law, and a still earlier decision called out by the complaint of one unable to rescind that it was hard to lose all remedy (Leake's Dig. of Law of Cont. 397; *Clarke* v. *Dickson*, E. B. & E. 148), and is abundantly supported by authority in our own State. (*Whitney* v. *Allaire*, 4 Den. 554; *Van Epps* v. *Harrison*, 5 Hill, 63, Kerr on Frauds, 330; *Krumm* v. *Beach*, 96 N. Y. 406.) But the correctness of the rule as thus laid down seems not to be challenged by the appellants, and needs no special defense. Their counsel grants that a substantive action for the fraud may be brought, but insists that when brought it can only be for a fraud in the subject-matter of the fraudulent contract and with damages confined to that; or, to state it negatively, that fraud in an extrinsic subject and damages which enforce and revive an extinguished obligation are not within the meaning or intent of the rule which permits an action for the deceit. And then it is further contended that the present action is not for a fraud in the subject-matter of the compromise agreement, but for the amount of the original contract obligation disguised as damages for a fraud.   Beyond this statement of the point raised as we understand it, we may prudently repeat it in the careful language of the learned counsel's brief.   He says: "What is it that the plaintiff contracted for in the compromise

agreement? It was $25,000, which he got. He received just what he contracted for. There is no question as to any fraud in reference to the consideration which he received for his release. He does not seek by this action to have that consideration made equal to what it was represented to be, because there is no complaint but what it was thus equal. The fraud for which an action for damages will lie must be some fraud with reference to the subject-matter which the defrauded party has received by virtue of the fraudulent contract. Where there is no fraud with reference *thereto* there can be no action." Such is the language addressed to us, and such the argument. It takes the $25,000 received to be the subject-matter of the compromise agreement, and assumes that there was no fraud in that because it was all fully paid. Exactly at that point we take issue. The $25,000 was in one sense the subject-matter of the new agreement, but in the same sense the fraud sued for inhered in that identical subject-matter, and was, in the learned counsel's own language, "with reference *thereto.*" What was the $25,000, and how came it to be in the negotiation that defined amount, and neither less nor more? Obviously it was the agreed value of a disputed right of action, but an agreed value won out of Gould by a false and fraudulent statement of the facts upon which such value depended. If no falsehood had been told him that value would have been greater in his judgment and so in his demand as a term of the compromise made; and that such value was fixed at $25,000, and no more was the direct product and result of the fraud. If we can see that the sum received as the then fair value of the disputed claim was not such value, and would not have been so received had the truth been told as it was known or believed, but instead a larger sum would have been required as the condition of a compromise, why is not the fraud in inducing the inadequate sum to be accepted a fraud in the subject-matter of the compromise agreement? That the $25,000 was but $25,000, and not another and a larger sum was the very fraud-point of the agreement; and so we reply to the propositions addressed to us that the fraud sued for *does* relate to the subject-matter of the com-

promise; that Gould did *not* "receive just what he contracted
for," but contracting for the fair value of his disputed claim
was induced by fraud to accept less than that fair value and so
there *is* question as to "fraud in the consideration which he
received for his release;" that he *does* "seek by this action to
have that consideration made equal" to what it would have
been had no falsehood been told him; and there *is* complaint
that it is not so equal.

And here we may turn to the other branch of the argument,
that the action is an attempt to recover under the mask of
damages the extinguished balance of the original obligation.
That is not the effort and such is not the true measure of dam-
ages. If it was, very much of the appellants' argument would
be difficult to answer. There having been no rescission of the
compromise agreement, that must stand, and it discharges for-
ever the original contract and extinguishes all right to any
balance due upon it. In no form of action while the com-
promise stands can that balance be recovered. But because of
that fact it does not follow that merely nominal damages re-
sulted from the fraud. While their measure is not the extin-
guished balance, and cannot be without making the rule as to
rescission an idle and useless formality, its measure is indemnity
for the real loss sustained, which may very well prove to be
less, and even much less than the contract balance. Such dam-
ages will compensate the fraud as make the compromise, which
is to stand, an honest and fair one, instead of a dishonest and
fraudulent one. Damages which leave it to stand but purge
it of fraud are what should be recovered. What the plaintiff
sold and the defendants bought was not a conceded but a dis-
puted claim; worth, therefore, ordinarily, something less than
its face for purposes of sale, transfer or cancellation; how
much less depending upon the continuing solvency of the
debtor, and the probabilities of its successful enforcement, and
that upon the underlying facts of the case; and depending
also upon the probable extent and expense of the expected
litigation. Upon a false statement of the facts material to the
probabilities of success, and so affecting vitally the value of the

disputed claim in the compromise negotiation, the plaintiff was induced to take $25,000 for his resisted demand. If there had been no fraud, how much more would he have got in the compromise? When we know that, we know the loss and can measure the indemnity. If no falsehood as to the facts had been told him, while defense and resistance were still threatened and contemplated, and his claim still disputed and denied, and a litigation needed to enforce his rights, how much more than the sum allowed ought he to have received and the defendants to have paid by way of compromise? For there is a compromise, and it must stand as a compromise, and the problem is only to make it an honest compromise. How much additional money will it take to do that? Or to state it another way; going back to the negotiation, assuming that the parties meant to avoid litigation and compromise their dispute, and that nothing but facts were disclosed, how much could Gould have reasonably demanded and the defendants have reasonably allowed as a final compromise above and beyond the $25,000 in fact allowed and received? That is the question of damages for the jury. It respects the fair value of the disputed claim as the subject of a reasonable and just compromise, or of a reasonable sale by the creditor to the debtor. It is the excess of that value upon the true state of facts as known or honestly believed over the value fixed upon a false state of facts, fraudulently asserted, which constitutes the plaintiff's actual loss from the fraud. A dispute ending in a compromise implies mutual concession and loss borne by each party, and if the compromise is honest and fair, the loss thus resulting is beyond recovery by either against the other. But that portion of the loss of one which is put upon him in excess by the fraud of the other, and is due solely to that fraud, may be recovered. It will not do to say that if no falsehood had been uttered there would have been no compromise at all, for as we have said, there is one which must stand, and can simply be corrected and made honest. One who buys a horse under false representations may keep the animal and so affirm the sale and recover damages. He cannot say he would not have

bought at all if he had known the truth, for he affirms the purchase.   And so here ; by not rescinding Gould affirms the compromise, but is entitled to recover such damages as will purge it of fraud and make it an honest compromise, and that is a very different matter from an attempt to recover an extinguished contract debt.   That there is difficulty in ascertaining these damages is true, and much must be left to the sound judgment and good common sense of a jury, but that often occurs in actions *ex delicto.*   The result will be that the plaintiff, affirming the compromise agreement and unable to recover the contract balance, is entitled in accordance with the general rule to have such compromise agreement made as good for him as it reasonably and fairly would have been if only the truth had been told instead of a falsehood asserted.   When that is done the loss due to the fraud, and that only, is recovered ; the true value of the disputed claim and not the false value ; and so not at all the extinguished contract balance.

So far we have gone upon a concession, made solely for the purposes of the discussion, that an actual fraud was committed.   The appellants now deny that, and insist that no fraud was sufficiently established to justify or make necessary a submission of that question to the jury.   The reasons assigned are that the representations made were not of personal knowledge, but of information honestly believed and relied upon ; that they were merely that the bonds had been returned to the bank and not that they had been returned to Gould ; and that the latter knew the truth from the cashier before the compromise.   The evidence shows that while the bonds had been purchased with a view of returning them to Gould they never were so returned, or passed out of the custody of the cashier, and no information to the contrary appears ever to have been given to the officers of the bank.   The proof, then, leaves it at least debatable whether these officers did not in substance represent that the equivalent bonds had not only been purchased with a view to their return to Gould, but had been so dealt with as to have gone into his special deposit and to have become his property, and whether they did not allege a return to Gould.

As to the contrary information given by the cashier, his statement was alleged to have been false, and a confident assertion made that the bank could prove it. We are satisfied, upon consideration of the evidence, that the nonsuit cannot be upheld upon the ground that there is no evidence of fraud.

The order of the General Term should be affirmed, and judgment absolute rendered for the plaintiff, with costs.

All concur.

Order affirmed and judgment accordingly.