ELIE WEILL and ELIE LAZARD, Appellants, *v.* JOSEPH MALONE and Others, Respondents.

*Fraud — restoring the consideration upon the rescission of a contract — construction, determined by the acts of parties.*

Where a person desires to rescind a contract because of fraud, he must restore or offer to restore the consideration which he has received under it.

Where a question arises as to the proper construction of an agreement the court may consider the acts which the parties have done under it, with a view to ascertaining what they understood the agreement to be.

A debtor and creditor, mutually interested in insurance policies, running to the debtor, upon which a loss has occurred, entered into an agreement as to the way in which the insurance moneys and the salvage on the stock insured should be divided, which agreement further provided that the debtor, upon assigning the policies to the creditor, should be released from responsibility.

*Held*, that the debtor, upon making such assignment, was released from all claims and demands against him upon the part of the creditor.

APPEAL by the plaintiffs, Elie Weill and another, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Kings on the 10th day of December, 1894, upon the decision of the court rendered after a trial at the Kings County Special Term dismissing the plaintiffs' complaint upon the merits, and also from an order entered in said clerk's office on the 9th day of March, 1895, denying the plaintiffs' motion that the said judgment be opened and the case set down for further hearing.

*Frederic S. Barnum* and *Eugene G. Kremer*, for the appellants.

*Charles J. Patterson*, for the defendants Halstead.

*James C. Church*, for the defendants Malone.

DYKMAN, J.:

This is an appeal from a judgment entered upon the decision of a justice of this court after a trial at the Special Term, and also from an order denying a motion of the plaintiffs to open the judgment.

The facts are recited in the opinion of the trial judge, and as we concur in his conclusions a recitation of the case by us would be unprofitable.

The judgment should be affirmed, with costs, on the opinion of

the trial judge, and as the appeal from the order is destitute of merit it should also be affirmed, with ten dollars costs and disbursements.

BROWN, P. J., and PRATT, J., concurred.

Judgment affirmed, with costs; order affirmed, with ten dollars costs and disbursements.

The opinion of the trial judge was as follows:

GAYNOR, J.:

The plaintiffs were commission merchants, while the defendants Joseph Malone & Co. were manufacturers of corset steels and like corset materials. These parties entered into a written agreement by which the plaintiffs became the selling agents of the entire product of the factory of the said Joseph Malone & Co. They were to guarantee all sales and have a commission of five per cent, and Joseph Malone & Co. were to fill all orders for such manufactured goods as they should be given to them by the plaintiffs. The contract also contemplated that the plaintiffs should make money advancements and deliver merchandise to Joseph Malone & Co., for it provided that they should be credited with all such advances and with the price of any goods shipped and invoiced by them to Joseph Malone & Co. It also provided that balances should be struck monthly and paid by the debtor side. Under this arrangement when goods were manufactured, though still lying in the factory and not yet delivered to customers, the plaintiffs were in the habit of crediting Joseph Malone & Co. with them and advancing to them their value, less the cash discount and the five per cent commission. They were also in the habit of depositing at the factory quantities of steel bars, which Joseph Malone & Co. drew from and used to make the corset materials, notifying the plaintiffs from time to time of the quantity used, whereupon the plaintiffs would charge them with the same. During these dealings Joseph Malone & Co. purchased some machinery from the plaintiffs, and gave them a chattel mortgage thereon to secure the payment of $4,000, the purchase price. The said chattel mortgage is also in terms for the faithful performance of the aforesaid agreement, which, of course, embraced the payment of all balances found against the said Joseph Malone & Co. as aforesaid. Books of account embracing the dealings, and showing the credits and

debits between the parties were kept by the plaintiffs. This being the condition of affairs, a fire occurred in the said factory of Joseph Malone & Co., by which the said factory and the machinery and the goods and material therein were much damaged. At the time of the fire the plaintiffs' books showed a balance against Joseph Malone & Co. of about $5,500. The fire occurred on April 26, 1890. The plaintiffs claim that, of the steel bars which they had deposited with Joseph Malone & Co. at their factory from time to time as afore-said, there should have been as much as ninety-two casks, of the value of about $5,000, at the time of the fire. About $4,000 worth of manufactured stock also lay in the factory at the time. In these circumstances, both parties having suffered by the fire, and the insurance, namely, $14,000, being in the name of Joseph Malone & Co., about $7,000 of which was upon the stock and the rest upon the machinery and fixtures, the said parties entered into the following agreement:

" This agreement, made this 1st day of May, 1890, by and between Elie Weill & Company and Joseph Malone & Company, witnesseth:

" The parties hereto agree to pool their joint loss on machinery and stock on the following basis, to wit:

" *First.* That the money received shall first be applied to cancel the indebtedness of Joseph Malone & Company to Elie Weill & Company, amounting to about $6,000 in full, and the balance, if any, to be divided *pro rata* between the parties as follows, and in the following proportions:

" Seventy-five per cent to Elie Weill & Company and twenty-five per cent to Joseph Malone & Company.

" And it is further agreed that whatever salvage there may be left after the payment of the five per cent to the adjusters shall be divided equally between Elie Weill & Co. and Joseph Malone & Co. ; there shall be a release of responsibility to Joseph Malone & Company, and they are hereby released from said responsibility, and in consideration thereof they shall, and do hereby, assign their policies to Elie Weill & Company.

" In witness whereof, the parties hereto have hereunto set their hands and seals the year and day first above written.

                              " ELIE WEILL & CO.    [SEAL.]
    " In presence of            " JOS. MALONE & CO.   [SEAL.]
        BERNARD OBERNDOERFER."

This agreement was carried out, in that the insurance money was paid and the salvage of stock divided in kind as therein provided; but the machinery was not divided, neither party apparently understanding that it should be, for nothing was said or done in that view. It is conceded that the insurance money was more than sufficient to pay the said book balance of $5,500. Afterwards, namely, in July, the plaintiffs began an action against Joseph Malone & Co. for an alleged conversion of about fifty-two casks (52,461 pounds) of the said ninety-two casks of steel deposited, from time to time, with them, at their said factory, by the plaintiffs as aforesaid. In the following month they took from said Joseph Malone & Co. the machinery mentioned in their said chattel mortgage thereon, professing to take it by virtue of the said mortgage. In the following March Joseph Malone & Co. brought an action against them for an alleged conversion of the said machinery. In this latter action the plaintiffs therein (Joseph Malone & Co.) claimed that the agreement above set out, and the carrying out of the same, was a complete adjustment between the parties, and that the taking of the said machinery under the said mortgage was, therefore, without right and a trespass. The present action was, therefore, brought to set aside the said agreement for fraud; or, failing in that, to have it so reformed or construed as to exclude the said mortgage from its intendment and operation. And now, at the end of the case, it is insisted, as it is in the complaint, that Joseph Malone & Co., having converted to their own use about fifty-two casks of the said steel bars deposited in their factory as aforesaid, and the plaintiffs being unaware of such conversion when they entered into the said adjustment agreement, it should be declared void for fraud. It is an answer to say that they have not restored, nor do they offer to restore, the money and the share of the salvage which they got under it (*Gould* v. *Cayuga Bank*, 99 N. Y. 333). But I also find that Joseph Malone & Co. converted none of the steel. They had used at least twenty casks in manufacturing, a large quantity was made worthless by the fire, and at least forty casks formed part of the salvage, which was examined, sorted, weighed and divided by the parties without a word of dissatisfaction or accusation. I also find that the $4,000 for the machinery had been paid. But as the mortgage also subsisted to secure the payment of any balances which Joseph Malone

& Co. should owe the plaintiffs, from time to time, it matters not whether any part of the said $4,000 remained unpaid; if it did, it formed part of the balance of $5,500; and, that having been paid out of the insurance money, the mortgage had no more life.

But as the plaintiffs insist that there still remains money due from Joseph Malone & Co., it may be well to go further.

The first words of the agreement are that the parties "agree to pool their joint loss on the machinery and stock." The only interest the plaintiffs had in the machinery was through their said chattel mortgage on part of it. The agreement then proceeds to provide that the insurance money for loss of both machinery and stock "shall first be applied to cancel the indebtedness" of Joseph Malone & Co. It then provides that if there be any overplus of insurance money, seventy-five per cent of it shall go to the plaintiffs and twenty-five per cent to Joseph Malone & Co., and that the salvage shall be divided equally. As each suffered a loss on stock, this seems to mean salvage on stock, and the parties so interpreted it practically, as has been stated. And, finally, the agreement provides that "there shall be a release of responsibility to Joseph Malone & Co., and they are hereby released from said responsibility." The intention plainly was that the entire responsibility of Joseph Malone & Co. to the plaintiffs should be released; so that if it can be made out that there was some indebtedness outside of the book account, which remains unpaid (which, however, has not been shown), nevertheless it was all contemplated by the agreement and is released thereby. The intention was not to give the plaintiffs the advantage which was given to them for nothing. If it was meant that only the book account should be released, or released only to the extent which the insurance money should pay it, I do not see why Joseph Malone & Co. turned their policies over to the plaintiffs and made with them such an agreement.

Let judgment be entered accordingly.