### BALLARD et al. v. BEVERIDGE.

(Supreme Court, Appellate Division, First Department. June 5, 1896.)

CONVERSION—EFFECT OF ACCOUNT RENDERED—NECESSITY OF RESCISSION.

Defendant and P. were attorneys in fact for D., with power to negotiate loans and extensions for him, and to use as collateral thereto stocks owned by D. In settlement, defendant, on request, sent D. an account showing the delivery of 400 shares to P., the retention of 800 shares as compensation, and the inclosure of certain shares and a check for the balance due. D. refused to accept the settlement, and referred the matter to P. A settlement was finally agreed on between P. and defendant, by which all of the stock was delivered to P., and defendant received payment for his services in cash. The settlement was held in escrow pending D.'s ratification. D. called attention to the 400 shares with which P. had not charged himself. P. claimed not to have examined the account first rendered by defendant, and denied the receipt of the 400 shares. Pending the settlement of the dispute, D. made an assignment, and the assignee, without rescinding the settlement, sued defendant for the conversion of the 400 shares. *Held*, that the action could not be maintained, since it should have been for a rescission of the settlement, or for damages for fraud in the settlement.

Appeal from circuit court, New York county.

Action by Virginius Ballard and John F. Wily, as assignees and trustees of Brodie L. Duke, for the benefit of creditors, against Alven Beveridge, for conversion. From a judgment in favor of plaintiffs, entered upon the verdict of a jury, and from an order denying a motion for a new trial, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

David McClure, for appellant.
W. J. Curtis, for respondents.

VAN BRUNT, P. J.   Prior to the 4th of March, 1893, the defendant had been doing business for one Brodie L. Duke, a resident of Durham, N. C., in raising moneys for said Duke, and obtaining extensions and renewals of existing loans.   On said day, Duke executed and delivered to the defendant his power of attorney, whereby he made the defendant his attorney and agent, intrusting to him certain stocks as collateral security for intended loans, and a number of notes signed, but with the dates and amounts unfilled, to be used by him in raising and renewing loans.   At the time when the defendant entered upon his duties as such attorney, he had a large amount of the common and preferred stock of the American Tobacco Company belonging to Duke, which stock was thereafter used by the defendant as collateral for various loans and renewals of loans which he negotiated on Duke's behalf under the powers. Upon the same day, to wit, March 4, 1893, Duke executed a similar power of attorney to Theodore H. Price, of the firm of Hubbard, Price & Co., a firm of brokers through whom Duke had for some time previously carried on speculations in stock and grain. The powers to the defendant and Price authorized them, respectively, to co-operate with each other in Duke's business.   In the transaction of this business, the defendant and Hubbard, Price & Co. had dealings together in respect to the loans of Duke and the stock pledged as collateral therefor.   On or about the 22d of March, Price sailed for Europe, and did not return until the 10th of May following; and, on the 20th of May, Price, representing Duke, asked the defendant for a statement of the account of his dealing on behalf of Duke.   He made several demands, and, on the final demand, was informed that an account had been mailed to Duke.   This was on the 10th of June, 1893.   This account showed, among other things, the delivery by the defendant to Hubbard, Price & Co. of certain shares of the stock of the American Tobacco Company, and that the defendant had on hand 1,000 shares of the common stock of the company.   Two hundred of these shares he remitted to Duke, with a check for a cash balance of $3,076.68; and 800 shares he retained as an equivalent for compensation charged in said account to the amount of $25,839.03. Upon the receipt of this amount, Mr. Duke, on the 12th of June, 1893, wrote to the defendant, Beveridge, as follows:

"Dear Sir: I have your favor of 10th inst., with inclosures as stated. I notice from your statement that you have in hand 800 shares of my American Tobacco stock. I notice also that you have me charged on account $25,839.03 for services, and you inclose your check for $3,076.68 to balance account. I understand you to mean by this that it is in settlement. I notice that upon most of these loans the brokerage was deducted when they were made, and I therefore do not understand where your claim of $25,839.03 comes in. I herewith return your check, and refuse to accept your statement as a settlement; and, inasmuch as I cannot come to New York to arrange the matter, I have forwarded your statement to Mr. Theo. H. Price, with instructions to adjust the matter with you, as I absolutely refuse to accept any such settlement; and I demand that you turn over to Mr. Price the 800 shares of stock at once."

Mr. Price received the account, and at once opened negotiations with the defendant for a settlement of the dispute between him-

self and Mr. Duke. Mr. Price claims not to have examined this account of the defendant. In the negotiations for the settlement, Price employed Mr. Cromwell, of the firm of Sullivan & Cromwell, as the attorney of Mr. Duke to conduct the negotiations. The defendant, Beveridge, claimed that he was entitled as compensation (in addition to the commissions for brokerage) to commissions as trustee, he acting as the agent and trustee of Duke in the conduct of his business, under the power of attorney. Negotiations for settlement were had between the defendant and his attorney and Mr. Cromwell. Mr. Cromwell states that at the time of the settlement, which took place on the 10th of July, he did not recollect that the account which the defendant rendered to Duke was before them. He however, stated that he would not regard it as fair —so many details transpired—to fairly contradict Mr. Bushe or Mr. Beveridge if they should say the account was there. In Beveridge's testimony, he distinctly states that the account was before them at the time of the making of the settlement.

The principal question of contest upon the settlement was the amount of compensation which should be allowed to the defendant for the transaction of this business in addition to his brokerage commissions. Finally, a settlement was agreed upon, by which the defendant gave up certain undated notes which he held, and also certificates of stock of the American Tobacco Company, to the amount of 800 shares, all in the name of the defendant, Beveridge, and indorsed by him in blank, and also a check for $3,076.68, to the order of Duke. These securities were receipted for by Sullivan & Cromwell, as attorneys for Duke, in full settlement and release of all claims whatever. At the same time, Mr. Cromwell gave his check to the defendant for the sum of $5,500, the amount of extra compensation which it was finally determined that the defendant should receive from Duke. Beveridge executed a general release to Duke, and delivered the same to Mr. Cromwell, who gave the following receipt:

"All differences between Brodie L. Duke and Alven Beveridge having been this day adjusted, each having received the amount of money agreed upon in settlement, and Beveridge having delivered to me a general release to Duke, I undertake to procure and deliver within ten days from date, to Beveridge, a general release from Duke to Beveridge. I am to hold Beveridge's release to Duke in escrow until delivery of Duke's release to Beveridge."

Duke never executed this general release, and the general release of Beveridge to Duke was never delivered. About one week after this settlement, Hubbard, Price & Co. rendered their account to Duke. Upon an examination of these accounts by Duke, he ascertained that there was a charge in Beveridge's account of 400 shares of stock as delivered to Hubbard, Price & Co., which were not credited in the account of that firm. Duke could not determine as to which of these parties were chargeable with this stock, and considered it as a dispute between Beveridge and Price, and referred the matter to Mr. Price for settlement. The defendant and Price had certain negotiations, the defendant insisting that the stock had been delivered to Hubbard, Price & Co. as charged in

the account, and Price insisting that it had not been received, and no adjustment was arrived at. On the 12th of December, 1893, Duke made a general assignment for the benefit of creditors to the plaintiffs; and in March, 1895, this action was brought against Beveridge for the conversion of the 400 shares of stock, Mr. Price verifying the complaint as the attorney in fact of the plaintiffs. The defendant denied the conversion, set up the accounting and the delivery of the securities by him to Duke, and the payment of the moneys by Duke to him in full settlement of all claims upon either side. Upon the trial of the action, it was claimed upon the part of the defendant, Beveridge, that this action could not be maintained without a rescission of the accounting between Duke and himself. This objection was overruled, and this seems to be the only question which it is necessary to consider in the disposition of this appeal.

It is urged upon the part of the respondents that, as the item of 400 shares of stock was not the particular subject-matter of the difference between Mr. Duke and the defendant, such accounting is not a bar to the action in question; and our attention is called to the cases of Carpenter v. Kent, 101 N. Y. 591, 5 N. E. 787, and Conville v. Shook, 144 N. Y. 686, 39 N. E. 405. In these cases it was held that upon the discovery of an erroneous item in an accounting, it is not necessary that the whole account should be opened and readjusted, but the mistake can be corrected, and the rights of the parties adjusted as to such mistake. But it is to be observed that, in the cases cited, the mistake was admitted, and the accuracy of the claim was conceded, by the party proceeded against. There was no dispute but that there had been a mistake. In the case at bar, however, the claim upon the part of the defendant is that there was no mistake; that this account had been rendered containing this stock which he actually delivered to Hubbard, Price & Co., and that the account containing this item was in the hands of Hubbard, Price & Co., charging them with this amount of stock, for days prior to the settlement; that it was in the hands of Mr. Cromwell at the time of the settlement; and that it was considered in relation to the settlement. It is true that in the settlement the only items which form the subject-matter of the dispute were the 800 shares of stock and the $25,000 of compensation, and that these items were adjusted, and then the parties agreed that there was a full accord and satisfaction, Mr. Cromwell paying a balance of $5,500 to the defendant. In consideration of this settlement, the defendant gave up his claim, a considerable amount of which was conceded to have been well founded; and it is now sought to charge him in conversion as though no settlement whatever had been had between the parties. We do not understand that such an action can be maintained without a rescission. The authorities cited to support this action are cases in which there was a confessed mistake, and the claim was conceded upon the part of the defendant. In the case at bar no such concession is made. The defendant claims, as already stated, that the stock was delivered to Hubbard, Price & Co.; and Price had these ac-

counts, containing this charge, for some time prior to the time of the settlement, although he says he did not examine them. Under this condition of affairs, it is difficult to see how the defendant could be deprived of his claim for the $25,000 and his lien upon the 800 shares of stock, and be no better off in respect to the other items of the account than if they had not been mentioned therein. The case of Gould v. Bank, 99 N. Y. 333, 2 N. E. 16, indicates clearly what is the remedy under such circumstances. The party may maintain his action to recover damages for the fraud, if there has been fraud in the settlement, or he may maintain his action in equity for a rescission, offering to return that which it would be equitable to return. If this were a case of mutual mistake, that mistake might possibly be corrected under the rule laid down in the authorities cited by the respondent. But it is sought to charge the defendant as for a fraud, to sue him as though no such settlement had ever been had. This does not seem to be recognized by any of the authorities to which our attention has been called. It is suing upon an original transaction, irrespective of the settlement; and the court in the case of Gould v. Bank, supra, held that this cannot be done, whereas, if an action had been brought for a fraud in the subject-matter of the compromise agreement, it might have been maintained. Under all these circumstances, it would seem that the right of the plaintiffs to recover in this form of action cannot be maintained. Either there must be a rescission, or an action in equity for rescission, or relief must be obtained in an action for damages for the fraud in the settlement.

For these reasons, we think that the judgment was erroneous, and that the judgment and order appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.