### URTZ v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department.   March 9, 1910.)

1. RELEASE (§ 24*)—FRAUD—REMEDIES.

One induced by fraud to execute a release of a claim for damages for negligence may rescind, return or tender the money received under it and sue on the original cause of action, or he may affirm the settlement, retain the money received, and sue for damages for the fraud, or he may sue in equity to rescind and for equitable relief offering in the complaint to restore the money, if he is not entitled to retain it.

[Ed. Note.—For other cases, see Release, Dec. Dig. § 24.*]

2. ACTION (§ 36*)—CHANGE OF CHARACTER OR FORM.

A judgment for plaintiff suing for fraud inducing the compromise of a claim for the negligent death of her intestate is not sustainable as rendered in an action for the original negligence, though so tried and submitted, when such an action was not maintainable because the compromise had not been rescinded and the money received under it tendered back, and it is not sustainable as rendered in an action for the fraud when the question of damages for fraud was not submitted to or passed on by the jury.

[Ed. Note.—For other cases, see Action, Dec. Dig. § 36.*]

3. FRAUD (§ 49*)—REMEDIES—ISSUES, PROOF, AND VARIANCE.

One suing for fraud inducing the compromise of a claim for damages for the negligent death of plaintiff's intestate need only prove that an accident occurred, that intestate's death resulted, and that a claim for liability against defendant was made, and he need not show the existence of a valid claim against defendant.

[Ed. Note.—For other cases, see Fraud, Dec. Dig. § 49.*]

Appeal from Trial Term, Lewis County.

Action by Rose M. Urtz, as administratrix, against the New York Central & Hudson River Railroad Company. From a judgment for plaintiff, and from an order denying a new trial on the minutes, defendant appeals. Reversed, and new trial ordered.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Purcell & Purcell, for appellant.
Pitcher & O'Brien, for respondent.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

WILLIAMS, J. The judgment and order should be reversed and a new trial granted, with costs to the appellant to abide event.

The action was brought to recover damages for fraud in the compromise of a claim for damages resulting from the death of plaintiff's intestate caused by the negligence of the defendant. The compromise was made between the plaintiff and the claim agent of the defendant, one McCormick. The fraud alleged consisted of various statements made by McCormick.

The intestate was killed while driving a team across defendant's tracks April 9, 1906. McCormick, on hearing of the accident, wrote the widow expressing sympathy for her misfortune, and saying he would call upon her in a few days, and would then be able to advise her what could be done. He investigated the accident, and reported it fully to Dwyer, chief claim agent of the defendant, among other things, saying the widow claimed $10,000 for the death of her husband, and the loss of the team, and advising the payment of $2,250 to the widow. The letter to the widow and the report to Dwyer bear the same date, April 12, 1906. Five days later, on April 17th, McCormick telegraphed Dwyer, asking what action was to be taken, and saying that attorneys were trying to get the case. Dwyer replied he, McCormick, might negotiate settlement on the best terms he could up to the amount he recommended in his report of April 12, 1906. The next day, April 18, 1906, McCormick called on the widow, told her he had not yet looked up the matter, was going to try to get the company to pay all he could, but did not know how much that would be. He had her make petition and bond for appointment as administratrix, which he had prepared, and on April 20, 1906, she was duly appointed. Without having any further negotiations with the widow, April 21, 1906, he wrote Dwyer that he had settled with her for $2,250, and inclosed a voucher to be approved of and signed by the officers of company (and later by the widow), saying a Syracuse lawyer was after the case, and asking Dwyer to forward check for the $2,250 as soon as possible. The voucher received by Dwyer was duly approved and executed in behalf of the company, and April 27, 1906, a check for the money payable to the widow's order, with the voucher, was sent McCormick. About April 30, 1906, McCormick called upon the widow, and then stated to her that he had investigated the accident, and learned that her husband was drunk at the time; that he was told before going on the track that the train was coming, and to look out for it, and replied that he could take care of himself; that a train could be seen by him before going on the track for a half mile either way; that the train was going about eight miles an hour; that all signals were given; that the company was not liable for the accident; that the team and wagon were worth about $300, and, as the defendant wanted to be liberal with her, he would pay her $500; that, if she did not take that sum, she would have to go to law, and it would be several years before she got anything, and that the lawyers would take it all anyway. And then he counted down $500 in cash and urged her to accept it. She, though demurring, finally accepted the money, and executed the release. McCormick forged the widow's name on the check for $2,250, indorsed his own name on it, and put it to his own credit in his bank, and it was subsequently paid

by the bank on which it was drawn; McCormick thus appropriated $1,750 of the money to his own use. He sent the papers back to the company, and they understood the settlement had been made for the $2,250. The matter rested in this way for over two years, and then the company discovered what had really been done in this and many other settlements made by McCormick. He was indicted, pleaded guilty, and was sent to prison for this and other transactions of a like nature, and is now serving his term. The widow learned the real facts also as a result of the prosecution of McCormick, and brought this action.

The plaintiff had the choice of three remedies to establish what she claimed to be her legal rights: First. She could rescind the compromise agreement, and prosecute her original claim for negligence, but in that case, she must, before action begun, return or tender back the money received by her, the $500. Second. She could affirm the compromise agreement, retain the money received under it, and seek to recover damages for the fraud. Third. She could seek in equity to rescind the compromise agreement, and ask for equitable relief, offering in her complaint to restore the $500, if she was not entitled to retain it.

She elected the second remedy, and brought her action to recover damages for fraud without returning the money received, the $500. Her complaint set out all the facts, and demanded judgment purely and simply upon this theory. If the trial had been conducted and the recovery had upon the cause of action set out in the complaint, very likely the result would have been proper within the cases of Gould v. Cayuga Co. Nat. Bank, 86 N. Y. 75, and 99 N. Y. 333, 2 N. E. 16. See Duquette v. Railroad Company (decided at the present term) 121 N. Y. Supp. 876. There the plaintiff elected the first of the above remedies, and was defeated upon the sole ground that he had not returned or tendered back the money received under the compromise agreement. The court held expressly that there could be no rescission of the compromise agreement without such return or tender back, and, so long as that agreement stood, it discharged forever the original contract, and extinguished all right to any balance due upon it. The plaintiff then brought a second action, electing the second of the above remedies, and the Court of Appeals held he could recover.

If this case had been tried and submitted to the jury on the theory of the second Gould Case, it might be well to consider whether the facts were such as to entitle plaintiff to recover under the law laid down in those cases, but it was not so tried. It was tried as an action for the original negligence. It was so submitted to the jury, and the recovery was based upon that theory. There could be no recovery upon such a basis for the reason above stated, and also because this action was not commenced within two years after the occurrence of the accident, and was therefore barred by the statute of limitations. Under the guidance of the trial court the plaintiff proceeded to give evidence of the accident and death, tending to show the death was the result of the defendant's negligence, that the intestate was not guilty of contributory negligence, and the damages resulting to the widow and next of kin from his death,

and the defendant gave its evidence relating to these issues. Evidence was also given as to the settlement, the release, and the alleged fraud practiced by McCormick in securing the compromise agreement. After counsel had summed up, the court charged the jury, and at the very beginning of the charge stated that the action was brought to recover damages for the death of the intestate, and further along said:

"The plaintiff can recover at your hands a verdict if she shows to you by affirmative evidence that her husband met his death without any fault upon his part, and that the acts of commission or omission on the part of this defendant were the direct cause of the death complained of. And in addition to that, if she shows that this settlement or release was obtained of her through fraud and imposition, she can recover for damages, which I will charge you hereafter, that she may be entitled to."

The court then discussed all these issues of negligence and fraud, and finally said:

"If you find that this release is not operative, that this settlement was obtained by fraud, and also find * * * the deceased was not guilty of negligence * * * and that the defendant was guilty of * * * negligence * * * which was the direct cause of the injuries and death, * * * then you will reach the question of damages."

The charge then as to damages was not damages occasioned by the fraud, but those allowed under the statute for the death of the intestate; that is, upon the original cause of action, which had been compromised, and upon the settlement of which the plaintiff had received the $500. At the close of the charge in chief, the defendant took exceptions thereto and especially to the statement in effect that if the case was one for a verdict in plaintiff's favor, as an action of negligence, the plaintiff would not be deprived of her right to recover by the release, if it was procured by fraud; in other words, that, if the release was procured by fraud, it was no bar to this action at law, upon the original cause of action—compromised—there having been no return or tender back of the money received under the compromise agreement. Later the court said with reference to the damages:

"If you find a verdict in this case for the plaintiff, you can make it $500 less than what you would otherwise make it. If you find a verdict for so much, why, you can take $500 from it, so that the defendant cannot be injured by that performance; that is, through the release procured by its agent, who was unfaithful to it."

There was also an exception to the charge that damages under the statute might be awarded for the death of the intestate. There is no escape from the proposition that this trial proceeded upon the theory of prosecuting the original cause of action, the release being avoided by the finding of fraud in obtaining it. This cause of action, as we have already seen, could not be maintained, so long as the compromise agreement stood, and it could only be gotten rid of by rescinding it and returning or tendering back the money received under it, and this must be done before the action was commenced.

The trial cannot be sustained as a recovery for damages for the fraud in securing the release, because the question of damages for such fraud was not submitted to or found by the jury. The theory of damages

for such fraud may be appreciated by reading the opinion of Judge Finch in the second Gould Case, from which I quote, viz.:

"The $25,000 (the amount paid under the compromise agreement) obviously was the agreed value of a disputed right of action, but an agreed value won out of Gould by a false and fraudulent statement of the facts upon which such value depended. If no falsehood had been told him, that value would have been greater in his judgment, and so in his demand as a term of the compromise made, and that such value was fixed at $25,000, and no more, was the direct product and result of the fraud. * * * Gould did not receive what he contracted for, but, contracting for the fair value of his disputed claim, was induced by fraud to accept less than that fair value, * * * and he seeks by this action to have that consideration made equal to what it would have been had no falsehood been told him. * * * There having been no rescission of the compromise agreement, that must stand, and it discharges forever the original contract, and extinguishes all right to any balance due upon it. * * * Such damages will compensate the fraud as make the compromise which is to stand an honest and fair one, instead of a dishonest and fraudulent one. Damages which leave it to stand, but purge it of fraud, are what should be recovered. What the plaintiff sold and the defendants bought was not a conceded, but a disputed, claim. * * * Upon a false statement of the facts material to the probabilities of success, and so affecting vitally the value of the disputed claim in the compromise negotiation, the plaintiff was induced to take $25,000 for his resisted demand. If there had been no fraud, how much more would he have got in the compromise? When we know that, we know the loss, and can measure the indemnity. * * * A dispute ending in a compromise implies a mutual concession and a loss borne by each party, and, if the compromise is honest and fair, the loss thus resulting is beyond recovery by either against the other. But that portion of the loss of the one which is put upon him in excess by the fraud of the other, and is due solely to that fraud, may be recovered. * * * That there is difficulty in ascertaining these damages is true, and must be left to the sound judgment and good common sense of a jury, but that often occurs in actions ex delicto. The result will be that the plaintiff affirming the compromise agreement, and unable to recover the contract balance, is entitled, in accordance with the general rule, to have such compromise agreement made as good for him as it reasonably and fairly would have been if only the truth had been told, instead of a falsehood asserted. When that is done, the loss, due to the fraud, and that only, will be recovered, the true value of the disputed claim, and not a false value, and so not at all the extinguished balance."

The rule where the action is for damages for fraud in the compromise agreement is made so plain by these quotations that it cannot be mistaken. I have quoted as briefly as possible and refer to report itself for a more detailed statement of the language used. Of course, we can readily see that no such question of damages as this was submitted to the jury in this case. The verdict was for $3,000, less $500, or $2,500.

To recapitulate, this action was brought to recover damages for fraud in a compromise agreement. As such an action it very likely could have been maintained. It was tried, however, as an action of negligence, and submitted to the jury as such, the compromise agreement being found by jury fraudulent and void, and therefore no bar to a recovery upon the original cause of action, the one compromised.

This form of action could not be maintained, because the compromise agreement was not rescinded and money returned thereunder or tendered back before the action brought. While the agreement remained unrescinded, the original cause of action was absolutely discharged, and no action could be maintained thereon, and by reason of the statute of

limitations.   And certainly the action and trial could not be sustained as one for damages for fraud in the compromise agreement because no such question of damages was submitted to, or passed upon by, the jury.

I further suggest: The court held no action could be maintained without proof by plaintiff of a valid claim to be compromised.   This can hardly be true.   All the plaintiff had to do was to prove that an accident occurred, a death resulted, and then that a claim of liability on the part of the defendant was made.

It was a disputed, resisted claim that was compromised, not necessarily a valid claim.   A compromise involved an uncertainty as to whether the claim could be enforced.  ·If certainty existed, a compromise would not ordinarily be made.

Judgment and order reversed, and new trial ordered, with costs to appellant to abide the event.   All concur.