**DURHAM v. WICHITA FALLS & S. R. CO.**

**No. 1453.**

Court of Civil Appeals of Texas. Eastland.

Nov. 15, 1935.

Rehearing Denied March 13, 1936.

E. W. Napier, of Wichita Falls, for plaintiff in error.

John B. King of Wichita Falls, and Harrell & Allison, of Breckenridge, for defendant in error.

LESLIE, Chief Justice.

This is a suit by R. L. Durham against the Wichita Falls & Southern Railroad Company for damages accruing to him by reason of the fraud of the defendant in preventing him from instituting and maintaining his suit (within the time prescribed by the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq.) for damages resulting from an injury sustained by him on March 30, 1927, while in the employment of the defendant. Recovery in the trial court was contested by the defendant on four different grounds: (1) Because the measure of damages was too conjectural; (2) because the plaintiff assumed the risk; (3) because the plaintiff was not at the time

of his injury within the scope of his employment; and (4) because, by filing another suit, the plaintiff elected a remedy, thereby foregoing the one here pursued. At the conclusion of the testimony, the trial court instructed the jury to return a verdict in favor of the defendant. By proper assignments this action of the trial court is presented as error. The parties will be referred to as in the trial court.

To understand the nature of the suit and the results of the trial and our views on the questions presented, it is necessary that a preliminary statement be made. Since defendant, or defendant in error, concedes that the plaintiff, or plaintiff in error, makes in his brief a substantially correct statement of the nature and result of the suit, and since the same appears to be a clear and succinct statement of those matters, that statement will now be set forth and adopted for that purpose:

"Plaintiff filed this suit on the 23d day of March, 1934, and pleaded as follows: That he was employed by the defendant in the capacity of fireman on the 30th day of March, 1927, and for many years prior thereto; that during all of said time the defendant owned and operated a line of railway extending from Wichita Falls, through Archer and other counties, to Ranger, Tex.; that on the date in question plaintiff was firing a locomotive which was being used to pull a freight train, many cars of which contained shipments in interstate commerce; that, when the train arrived at a point above 5 miles north of Olney, in Archer county, Tex., and while the train was moving at a rate of speed of about 5 miles per hour, in response to a necessary call of nature, the plaintiff got out of the engine cab in which he was working and attempted to climb into a coal car on said train, and while on the ladder of the car his body struck a switch stand, which caused him to fall beneath the train, breaking his back and inflicting other injuries upon him; that the defendant provided no means upon its locomotives for employees to attend to matters of that nature, and it had long been the established practice and custom of the defendant's employees under such circumstances to use cars in the manner hereinabove alleged; that such custom and practice was well known to the defendant, and that it was a violation of the defendant's rules and established custom to stop a train for such purpose, and the employees were compelled to resort to methods employed by the plaintiff as above set out; that the engineer on said locomotive was in complete charge of the locomotive and train, and was the plaintiff's immediate superior, and had control of the plaintiff in all matters pertaining to his work, and that immediately prior to the time that plaintiff left the engine cab for the purpose of boarding said car he advised the engineer of his intentions, and that the engineer gave his consent thereto, and, with full knowledge of the plaintiff's intention and purposes he continued to operate the train at a rate of speed of approximately 5 miles per hour; that at the time and place in question the defendant maintained said switch stand, consisting of perpendicular rods about 7 feet in heighth, which were firmly attached to the end of a cross-tie, about 46 inches from the rail, and in such position that there were only 16 inches clearance between the switch stand and the defendant's cars as they moved over said rails; that the position and heighth of said switch stand was such that it was impossible for a man's body, hanging on the side of a car, to clear said switch stand; that it was customary and proper to maintain such switch stands at a distance of 6 feet and 9 inches from the nearest rail, and in such position that there would be ample clearance for a man hanging on the side of a car as aforesaid; that, had the defendant observed its duty in this respect and placed said switch stand at a reasonable and safe distance from the rail, the plaintiff would have cleared the switch stand, and he would have suffered no injury, and the plaintiff alleged in this particular that the defendant was guilty of negligence, and that such negligence was a proximate cause of his injuries; that as a result of his injuries he is now totally and permanently disabled; that he was earning, and was capable of earning, $200 per month during the remainder of his life expectancy, which is now 24 years.

"Plaintiff further alleged that the defendant, acting by and through its claim agent, George Harpin, and its doctor, Wade Walker, induced him to settle his claim for damages for $550, and represented to him that there were no fractured bones in his back, and that whatever pain he had in his back was due to rheumatism; that the settlement was made about June 1, 1927. Plaintiff further alleged that these

representations were false, and that the agents and doctor knew that they were false at the time they were made, and that the sum of $550 was grossly inadequate as a settlement for his injuries; that the doctor and agent continued to represent to him after said settlement was made that he had no fractured or broken bones, and that the pain that he was suffering in his back was the result of rheumatism; that the plaintiff believed and relied upon said representations until about the 9th day of May, 1932, when the pain in his back became so severe that he was compelled to seek medical aid, and he then had an examination made which revealed the fact that he had three vertebræ broken, and that his spine was in such condition as to render him permanently disabled to perform any kind of work throughout the remainder of his life; that by reason of the representations of the defendant's agents and doctors he believed the sum of $550 which the defendant paid him fully compensated him for all of the injuries that he believed he had sustained, and he did not know that he was entitled to anything further until the 9th day of May, 1932, and, had it not been for such representations, he would have instituted a suit under the Federal Employers' Liability Act within the two years' time provided in said act; and he alleged that his claim for damages was of the reasonable value of $25,-000, and that, had it not been for such fraudulent representations, he could and would have effected a settlement of his claim for such sum before he lost his right of action under the Federal Employers' Liability Act, and that by reason of the fraudulent conduct of the defendant he has been deprived of his right or cause of action under the Federal Employers' Liability Act to his damage in the sum of $24,450."

This suit was filed March 23, 1934.

It will be observed that no recovery is sought by the plaintiff, on the original cause of action as such. The statute which created the right, the same arising under the Federal Employers' Liability Act, made it conditional upon the suit being brought within two years after the accrual of the cause of action. Desmarais v. People's Gas Light Co., 79 N.H. 195, 107 A. 491; Reading Co. v. John L. Koons, 271 U.S. 58, 46 S.Ct. 405, 70 L.Ed. 835; Alvarado v. Southern Pacific Co. (Tex.Civ.App.) 193

S.W. 1108; Bement v. Grand Rapids, etc., Ry. Co., 194 Mich. 64, 160 N.W. 424, L.R.A.1917E, 322. Obviously, the suit does not come within the said two-year period of time, but some five years after the alleged personal injury.

The plaintiff's suit being in substance one for the loss of the value of a cause of action which he alleges he had against the defendant, and but for whose fraud in concealment thereof from him he would have enforced within the statutory period of two years, it is here contended by the defendant: (1) That to permit a recovery on a cause of action such as is asserted by the plaintiff would be to permit an evasion of the statutory limitation on the enforcement of the original cause of action, and (2) that any recovery of damages by the plaintiff would be too remote, speculative, and indefinite; that is, it would be impossible to determine in this suit whether or not the plaintiff would have recovered any judgment against the defendant had he brought a suit within the two years' time upon his original cause of action; that to permit a present jury to find with regard to such issues would be to allow a present jury to substitute its independent judgment for that of an "unknown" and "unknowable" jury; (3) that in a case like this, where there is uncertainty both as to the right of recovery and as to the amount of recovery, it cannot be otherwise than that the entire cause of action is purely speculative and one that the law will not recognize.

For aught the record shows, either of the above contentions advanced by the defendant in error may have constituted the ground upon which the instructed verdict was granted. These contentions find support in the opinion of the Supreme Court of South Carolina in H. R. Whitman v. Seaboard Air Line Ry., 107 S.C. 200, 92 S.E. 861, 862, L.R.A.1917F, 717. It seems to have been there held that an action cannot be maintained to recover damages for loss of a right of action to recover for personal injuries, barred by the statute of limitation, where the delay in bringing the action is due to the fraud of the defendant, since the measure of recovery in such a case would be purely speculative. While this appears to have been the exact ground upon which that decision was based, the opinion does contain the additional statement that "it is

manifest that, if the charge of fraud can set aside the statute of limitations, then the statute of limitations is nullified."

We are not in accord with the views expressed in that opinion, and think that the sounder rule of law applicable to the facts of this case is to be found, stated in substance at least, in the following authorities: Urtz v. New York Central, etc., Ry. Co., 202 N.Y. 170, 95 N.E. 711, 713, and in Desmarais v. People's Gas Light Co., 79 N.H. 195, 107 A. 491, 492; Gould v. Cayuga County Nat. Bank, 99 N.Y. 333, 2 N.E. 16.

■ As stated, the instant suit is not upon the original liability or cause of action. In fact, the plaintiff disclaims that he asserts liability on the original cause of action and states that he proceeds upon the basis that the original cause of action does not now exist. The damage here alleged is the loss, through the alleged fraud of the defendant, of the value of the original cause of action, etc. Deeming this to be a proper interpretation of the plaintiff's pleadings, we are of the opinion that the measure and nature of the plaintiff's alleged damages are broadly and substantially stated in the Urtz Case, as follows: "The jury in considering the question of damages should first ascertain whether or not the plaintiff was originally entitled to a recovery of some amount. Otherwise they could not determine whether, by executing the release, she parted with value, and, if they could not determine that, they could not decide whether or not she was damaged. Through what method or by what means would they be able to know that the sum of $500 was not equal to the fair value of the right of action until they knew that the right of action had validity and would entitle her to some amount? She was entitled to the fair value of this disputed claim but that value must be ascertained through a rule·possessing reasonable certainty and working a reasonably just result. If the jury determined that she was not originally entitled to recover, then their verdict would be for the defendant. If they determine that she was entitled to recover, then they would proceed to measure the damages, and the rule by which they should be guided therein has been clearly expressed by us in Gould v. Cayuga County Nat. Bank, 99 N.Y. 333, 2 N.E. 16. Assuming that the parties meant to avoid litigation and compromise their dispute, and that the true facts and de-

fendant's contradiction of them were disclosed, how much could the plaintiff have reasonably demanded and the defendant reasonably have allowed as a final compromise above and beyond the $500, in fact allowed and received? That the jury must answer. * * * What under all the conditions and circumstances was this claim of the plaintiff, valid under the true, yet opposed and contradicted, state of facts, worth for purpose of sale, transfer or cancellation, if anything at all, above the $500?"

In the instant case the settlement and release was upon the consideration of $500 paid, and it seems to us that the rule of law above announced fits the situation presented by this record. The rule is believed to be sound and well supported by the reasoning employed in the above opinions. For other authorities see Bailey v. London Guarantee & Accident Co., 72 Ind.App. 84, 121 N.E. 128; Sovereign Camp, W. O. W., v. Latham, 59 Ind.App. 290, 107 N.E. 749; Supreme Council, etc., v. Apman, 39 Ind.App. 670, 80 N.E. 640.

■ The theory of recovery here approved involves no such proposition as that the trier of the facts in the instant case will, in estimating the value of the plaintiff's claim, be put to the necessity of ascertaining or determining what the verdict of a jury would have been in the original cause of action, had the same been· sued upon within two years after the accrual thereof. Concerning that phase of the opinion in the Whitman Case, the Supreme Court of New. Hampshire in the Desmarais Case, supra, commented pertinently as follows: "No authorities are there cited, and the conclusion that the plaintiff's damages could not be measured because it could never be known what the jury would have awarded in the original case, does not seem to rest upon satisfactory grounds. The opposite conclusion was reached in New York. Urtz v. New York Central, etc., Ry. Co., 202 N.Y. 170, 95 N.E. 711. The court were there divided in opinion as to the measure of damages, but all agreed that the damages were not too remote or speculative, and that the plaintiff was entitled to recover 'the fair value of the claim' as it existed when the fraud was practiced."

■ Upon authority of the opinion in the Desmarais Case, we also overrule the contention that the plaintiff's suit is an effort to circumvent the statute of limitation, and therefore against public policy.

Although no case similar in points of fact to this one seems to have been directly passed upon by either the Supreme Court of Texas or by the Supreme Court of the United States, the course of reasoning on a kindred question, where a purely limitation statute was involved, is persuasive of the soundness of the views above expressed. For instance, in Texas & P. Ry. Co. v. Gay, 86 Tex. 571, 26 S.W. 599, 25 L.R.A. 52, it was held that the fraudulent concealment of a cause of action takes the cause out of the bar of the statute of limitation, unless the plaintiff's failure to discover it is caused by his negligence. To the same effect is the opinion in Bailey v. Glover, 21 Wall. 342, 349, 22 L.Ed. 636, where it is said: "To hold that by concealing a fraud, or by committing a fraud in a manner that it concealed itself until such time as the party committing the fraud could plead the statute of limitations to protect it, is to make the law which was designed to prevent fraud the means by which it is made successful and secure."

Taking the record as a whole and viewing the testimony in the light most favorable to the plaintiff, we are constrained to hold that there is some testimony of damages suffered by the alleged fraud in the procurement of the release, etc., as distinguished from the damages accruing from the accident itself. In other words, such an issue was raised.

■ By the sixth counter proposition the defendant asserts that there was no proof of any fraudulent concealment by the defendant preventing the plaintiff from timely bringing his suit for damages under the Federal Employers' Liability Act, and that, if there were any such proof, its effect would nevertheless be destroyed by the abundant opportunity on the part of the plaintiff to learn the truth concerning his injuries, etc. We are not entirely satisfied with the state of the testimony in this respect, but, since the law requires that all the testimony be viewed in the light most favorable to the one against whom an instructed verdict has been given, we are of the opinion that plaintiff's testimony covered the ground and made out his case to an extent entitling him to go before the jury on this and the other issues raised. We cannot say as a matter of law that there is no proof in the record of fraudulent concealment preventing the plaintiff's timely bringing and prosecuting this suit under the Federal Employers' Liability

Act, or in due time after the discovery of the fraud.

■ We cannot hold that the testimony in this case shows, as a matter of law, that the plaintiff assumed the risk of injury in the manner he sustained the same. He was injured by coming in contact with a main-line switch stand which stood too near to the side of the passing car to which he was holding. There is testimony that he did not see the particular switch stand, and that it was customary throughout the country to maintain the main line switch stand a distance of 6 feet from the rail, thus giving an abundance of clearing space for employees clinging to the side of passing cars. The switch stand upon which the plaintiff was injured was but 15 to 18 inches from the side of the passing car, and did not allow sufficient space for the plaintiff's body to clear as the train went by the switch stand. It cannot be held that the plaintiff knew at the time of the injury of the nearness of the particular switch stand to the side of the car, or that he completely appreciated the risk in undertaking to pass it as he did. Orange Lumber Co. v. Ellis, 105 Tex. 363, 150 S.W. 582. Neither does the testimony warrant the holding of a presumptive knowledge on the part of the plaintiff of the danger encountered, and due to lack of clearance space for his body between the switch stand and the side of the car. Chicago, R. I. & G. Ry. Co. v. Frederick (Tex. Civ.App.) 74 S.W.(2d) 275, and authorities there cited. The plaintiff was a fireman on the engine, not a switchman, and there is a great difference in knowing the general location of a switch stand and knowing its nearness to the side of a passing car.

■■ The fact that the amount of damages claimed by the plaintiff in error is uncertain and difficult to ascertain does not affect his right, if any, of recovery. In this state the question as to whether damages have been sustained and the amount thereof are primarily and peculiarly for the determination of the jury under appropriate instructions from the court. 13 Tex. Jur. p. 261, § 148 et seq.; Id. p. 427, § 252 et seq.; Stuart v. Western Union Tel. Co., 66 Tex. 580, 18 S.W. 351, 59 Am.Rep. 623; Texas Employers' Ins. Ass'n v. Shilling (Tex.Com.App.) 289 S.W. 996, 999. The last authority cited discussing the point uses this language: "As a matter of plain fact, in many cases the jury function

is to make an estimate, and thus it must be as long as human intelligence remains finite. The difficulty of the matter and the degree of uncertainty which every one knows does exist in all such cases afford no ground for refusing to make the effort to administer justice."

We are further of the opinion that the record does not show the plaintiff to be bound by any prior election of remedies in the present action. He now pursues the only remedy he ever had, assuming his case of alleged fraud to be well founded, which view, as pointed out, we must take when considering the testimony in the light most favorable to him. There is no basis for the contention of a previous election of remedies. Linz v. Eastland County (Tex.Com.App.) 39 S.W.(2d) 599, 606, 77 A.L.R. 1466. In this last opinion it is said: "His [plaintiff's] supposition that he had a particular remedy and his effort to enforce it is immaterial and does not constitute an election, unless the remedy in fact existed."

This court has thus considered each contention presented, and, being of the opinion that there was error in giving an instructed verdict, the judgment of the trial court is, for the reasons assigned, reversed, and the cause remanded.