GALVESTON, HARRISBURG & SAN ANTONIO RAILWAY COMPANY v. JOHN T. WALKER ET AL.

No. 2727. Decided March 10, 1920.

(219 S. W., 815.)

1—Accord and Satisfaction—False Representations.

One injured by negligence of a contractor in constructing work for a railway and who has agreed on settlement with both for an amount partly in cash and. partly in notes given by the contractor, could not maintain suit against the railway on his original cause of action; but if his acceptance of the notes was induced by false representations made by the agent of the railway that the contractor was solvent, he could recover from it the amount of such notes remaining unpaid. (P. 290).

2.—Same—Release—Surety.

The release of a railway from liability for damages to one injured by negligence of its contractor in construction work, made for cash paid and notes given by the contractor, did not discharge the surety on the contractor's bond for indemnifying the railway against liability for the contractor's acts. The injured person was not a party to the bond and could neither enforce nor release it. Such settlement merely fixed the amount due the injured party, and the surety was not prejudiced nor entitled to complain so long as the agreed amount did not exceed the sum justly due. He remained liable on his bond for whatever the railway was compelled to pay by reason of the contractor's default. And this was true though such payment was one enforcible against the railway in spite of the release only on the ground that by falsely representing that the contractor was solvent it had induced the injured party to accept his notes in settlement. (Pp. 290-293).

3.—Surety.

One guaranteed by an indemnity bond against liability for the acts of a contractor, the principal therein, does not by virtue of such contract assume a duty to the surety to withhold payment to the contractor for his services until the latter settles the obligations to others caused by his acts and against liability for which the bond has guarantied. (Pp. 293, 294).

Error to the Court of Civil Appeals for the Fourth District, in an appeal from Bexar County.

Walker sued the Railway Company for personal injuries, and, in the alternative, for unpaid notes given by Hipp in settlement thereof, alleged to have been accepted because of defendant's representations that issue, there have been numerous irreconcilable conflicts be-

of Hipp's solvency. Defendant made parties, to its action over against them, Hipp, the contractor whose negligence caused the injury, and the Fidelity & Deposit Co. of Md., surety for Hipp on an indemnity bond to protect defendant from liability through Hipp's acts. Plaintiff recovered against defendant the amount of the unpaid notes given in such settlement, and defendant was, by peremptory instruction, denied recovery against Hipp and the Surety Co. On defendant's appeal the judgment in favor of plaintiff was reversed; that in favor of the surety company was affirmed. 163 S. W., 1038. Both appellant and Walker thereupon obtained writs of error on separate applications.

*Baker, Botts, Parker & Garwood, Templeton, Brooks, Napier & Ogden,* and *William F. Ezell,* for plaintiff in error.—The plaintiff is not entitled to recover on his original cause of action. G. C. & S. F. Ry. Co. v. Harriett 80 Texas, 73; Weatherford, etc., Ry. Co. v. Wood, 29 S. W., 411; Wettermark v. Burton, 70 S. W., 1029; State v. Rhomberg, 69 Texas, 212; 6 Cyc., 319; Blake v. K. C. S. Ry. Co., 85 S. W., 430; Robertson v. Trammell, 83 S. W., 258; Cleveland, etc., Ry. Co. v. Hilligoss, 86 N. E., 485; Grymes v. Sanders, 93 U. S., 62.

There is a full and complete accord and satisfaction, and the original cause of action is extinguished where, as in this case, the parties have agreed to substitute a new promise for the old obligation, and the agreement is performed when the new promise is actually substituted for the old obligation; satisfaction is complete without performance of the new promise. Where there is a failure to perform the new promise that has been substituted for the old obligation, such failure does not entitle the promisee to a rescission and does not operate as a revival of the old obligation; he must sue to enforce the new promise or to recover his damage for the breach thereof. Same authorities. Also, Moore v. Cross, 87 Texas, 561; G. H. & S. A. Ry. Co. v. Cade, 93 S. W., 124.

The testimony showing that if plaintiff was injured by reason of the negligence of any one, it was the negligence of the said Hipp, or his employees; and the evidence not being sufficient to show as a matter of law that Hipp had been released from his undertaking, the court erred in peremptorily instructing the jury to return a verdict in favor of Hipp.

The contract and bond bound the Deposit Company absolutely to indemnify the Railway Company against all such claims, suits and judgments as that of plaintiff; the said obligation has not been performed or released; and there is no evidence that would exempt the Deposit Company from performing its said obligation.

*Guinn & McNeil,* and *H. J. Myers,* for plaintiff in error Walker.— Where a claimant relying upon the fraudulent representations of

a railroad company's authorized agent, is wrongfully induced to accept the notes of an insolvent contractor and release his claim against the company for damages for personal injuries received through the company's negligence, practically all of said notes being unpaid and claimant having never been fully compensated for his injuries, there has been no accord and satisfaction and said release is not binding on claimant. Brundige, v. Nashville, etc., R. R., 81 S. W., 1248; M. K. & T. Ry. Co. v. Reno, 146 S. W., 201; 1 Cyc., 338; 34 Cyc., 1062 (d); Nowell v. Kanawha & M. Ry. Co., 68 S. E., 288, 29 L. R. A. (N. S.), 325; Gibson v. Nelson, 31 L. R. A. (N. S.), 532; Overton v. Conner, 50 Texas, 117; Railway Co. v. Gordon, 7 S. W., 697; Camden Fire Ins. Co. v. Baird, 187 S. W., 699; 1 Cyc., 313, 315.

A railroad company, fraudulently inducing a claimant to accept worthless notes of an insolvent contractor in settlement of a just demand against it, can not claim that thereby there has been a full accord and satisfaction. Same authorities.

*Webb & Goeth,* for defendant in error Fidelity & Deposit Co.—It is the duty of the creditor to hold funds or securities that may be in his hands, or under his control, for the purpose of paying himself and protecting the surety, and any failure on his part to use ordinary care and reasonable diligence to so hold such funds will operate as a release of the surety. Bank v. Menefee, 134 S. W., 822; Means v. Worthington, 147 S. W., 346; Kempner v. Patrick, 95 S. W., 51; Bennett v. Taylor, 93, S. W., 704; 32 Cyc., 216, 173; Bank v. Powell, 149 S. W., 1096-1100.

A release of the principal will also release the surety. Long v. Patton, 93 S. W., 519-521; Union Stove Works v. Caswell, 16 L. R. A., 85.

If the creditor and the principal, without the knowledge and consent of the surety, make any material change or substantial alteration of a contract, although such change may be advantageous to the surety, such change or alteration will of itself operate to discharge the surety. Zang v. Hubbard Co., 125 S. W., 85-87; Casey-Swazey Co. v. Anderson, 83 S. W., 840; McKnight v. Lange Mfg. Co., 155 S. W., 977-978; Murrell v. Scott, 51 Texas, 520.

If the time for the payment of an obligation is extended, or the terms of settlement materially changed, or the stipulations of a contract altered, without the consent of the surety, he will thereby be discharged. Benson v. Phipps, 87 Texas, 578; Bank v. White Co., 50 S. W., 631; Clark v. Cummings, 84 Texas, 610-614; Stafford v. Christian, 79 S. W., 597.

MR. CHIEF JUSTICE PHILLIPS delivered the opinion of the court. The suit was one by John T. Walker against The Galveston,

Harrisburg & San Antonio Railway Company for damages on account of injuries sustained by his falling into an unfinished subway in the city of San Antonio then being constructed for the railway company by W. S. Hipp, who, for its indemnification, had given it a bond, with the Fidelity & Deposit Company of Maryland as surety, agreeing to fully protect it against "all claims, demands, suits or causes of action which may be lodged or brought against it by reasons of the acts or doings of the said contractor, his agents or employees, while engaged in the performance of the work undertaken by him."

Walker's claim was shortly settled without suit by Hipp's paying him $1,000 in cash and delivering him his ten notes for $200, each, maturing at 60 day intervals, and Walker's formally releasing all demands against both Hipp and the railway company. Hipp paid the first of the notes, but defaulted in the others.

The settlement with Walker was made by Hipp and an agent of the railway company. According to Walker's petition and the jury's finding, it was induced on Walker's part by the representation of the railway company's agent as to Hipp's solvency, when in fact he was at the time insolvent.

Following its answer, the railway company pleaded over against Hipp and the surety company on their bond for any amount Walker might recover against it. Hipp was cited but made no appearance.

The surety company pleaded that it had no knowledge of the settlement and did not consent to it. That if there was any deception used in bringing it about, it was innocent. That the settlement was a conclusive release of any liability on Hipp's part for the injury to Walker, and was fully effective both as to Hipp and itself. That its suretyship extended no further than for Hipp's liability to the railway company on account of his negligence in constructing the subway, and did not apply to any cause of action in Walker's favor against the railway company and Hipp for deceit or fraud in inducing the settlement. That the effect of the settlement, in its extension of the time for the payment of the amounts due Walker, was to change the position and relation of the parties, and to release it from all liability to the railway company under the bond. And that at the time of the settlement the railway company was indebted to Hipp in an amount in excess of that agreed to be paid Walker in the settlement; and thereafter, with knowledge that Hipp had not paid his notes to Walker, but without the surety company's knowledge, had paid over to Hipp such amount, and for that reason was not entitled to any recovery against it.

To this the railway company replied that the settlement was Hipp's independent and voluntary act; that it exercised no control over him in making it; that by the settlement the obligation of the surety company to it was in no wise varied; and the surety company was not entitled to be relieved of that obligation until the

railway company was released from all liability on account of the demands urged by Walker. in his petition.

The case was submitted to the jury in the trial court upon the theory that if Walker's agreement to the settlement was brought about by the representation of the railway company's agent with respect to Hipp's solvency, and Walker was not so lacking in diligence to discover the alleged fraud as to make limitation effective—which was pleaded both by the railway company and the surety company—he was entitled to assert against the railway company his original cause of action. The issues with respect to the railway company's liability thereon were accordingly submitted.

There was a verdict for Walker for $3,000 less the $1,200 paid him by Hipp. A verdict in favor of Hipp and the surety company was directed on the railway company's cross-action.

On the railway company's appeal, the Court of Civil Appeals affirmed the judgment in favor of the surety company, but otherwise reversed the judgment and remanded the cause, holding that Walker's original cause of action was concluded by the settlement, but that under his pleading he was entitled to a trial of his action for damages against the railway company for fraudulently inducing the settlement.

It is evident from Walker's pleading that he was willing to settle his original claim against the railway company for $3,000; and, with $1,000 of the amount paid in cash, to accept the notes of Hipp for the balance on the assurance given him by the railway company's representative as to Hipp's ability to pay them. It is not charged that any deception was practiced upon Walker in reaching the agreement upon the amount of the settlement. The complaint is that the railway company wrongfully brought about his acceptance of the mode of payment of a part of the amount. Having willingly made the settlement and having been induced thereto by no wrong charged against the railway company other than that of falsely representing that Hipp was able to carry it out, whatever cause of action Walker has against the railway company is limited to the redress of that wrong. If entitled to prevail in such an action, the measure of his damages would be such part of the agreed amount of the settlement as has not been paid him. If that amount were paid him, his complaint against the railway company would be fully met. Therefore, whatever cause of action he has, is confined to its recovery.

The real question in the case is as to the right of the railway company under the bond to require that the surety company hold it harmless against any recovery by Walker of the amount of Hipp's default because of its agent having represented to Walker in the settlement that Hipp was able to pay the amount.

The purpose of the bond was to protect the railway company against such a claim as Walker's. The bond recognized that the liability for such a claim was primarily that of Hipp and the surety company, as between them and the railway company, to the extent of its just amount. Their obligation under the bond was to pay that amount if there was any liability upon the claim, as the means of protecting the railway company against it. There has been no finding in the case that the amount justly due Walker on his claim is less than the full amount Hipp agreed to pay in its settlement. Hipp's admission of liability in that amount and his agreement to satisfy it, would not be conclusive upon the surety company, but if the amount he agreed to pay did not exceed the amount to which Walker was justly entitled, the surety company was not prejudiced by the agreement, for under the bond it was as fully bound as Hipp to pay that amount. Under such conditions, Hipp's action in making the agreement would be only in fulfilment of the common obligation of the bond.

Treating the amount agreed upon in the settlement as the just amount of Walker's claim, as it may be here, Hipp's and the surety company's obligation to the railway company, under the bond, to pay that amount rather than for it to be answerable for it, has not been performed. It has been satisfied only to the extent of $1,200. There is still owing upon it $1,800. Because of Hipp's default in the payment of the $1,800 and Walker's having been induced, as he avers, to agree to the settlement by the representation of the agent of the railway company as to Hipp's solvency, upon a favorable finding on that issue Walker will be entitled to recover the amount against the railway company. If so, the effect of the judgment will be but to require that the railway company make good the amount of Hipp's default.

If the obligation of Hipp and the surety company under the bond is in the amount of $1,800 and interest still subsisting and unsatisfied, should the railway company be required to make good to Walker Hipp's default in that amount, and the surety company be relieved from performing its unsatisfied obligation under the bond? That is, if Hipp and the surety company on account of Walker's injury still justly owe $1,800 in virtue of the bond, ought the railway company, primarily because of Hipp's default in his agreement to pay it, be required to satisfy Walker in that amount, but the surety company be not required to satisfy its outstanding obligation under the bond for an equivalent amount? This is the question.

Before it can be determined it must be ascertained whether for any of the reasons pleaded by the surety company the effect of the settlement was to release it from all obligation under the bond. Unless the surety company remains bound to the railway company,

under the bond, to protect it against the payment of the true amount, unpaid, of Walker's claim by itself paying such amount, all question as to its liability in the case is at an end. On the other hand, if its original obligation under the bond to so protect the railway company has not for some sufficient reason been extinguished, it is difficult to perceive upon what theory it should be relieved of it if the railway company is to be required to make good Hipp's default.

In considering whether this obligation has been done away with because of the release which Walker gave to Hipp, it should be clearly recognized that Hipp's liability to Walker on account of possible negligence in causing his injury, is one thing; and Hipp's and the surety company's liability to the railway company arising on their bond, is another. The obligation which the bond expressed was that Hipp and the surety company would protect the railway company against such a claim as Walker's. But the obligation was not to Walker or any one in his situation, or for their benefit. It was to the railway company and for its benefit. Walker was a stranger to the bond and could not enforce it. He was equally a stranger to its obligation and could not release it. It is manifest, therefore, that while Walker's release was effective to extinguish Hipp's liability to him as a wrong-doer, and that of the railway company, as well, on such cause of action as he had against it on account of the injury, the release is of no consequence in determining the duty and obligation of Hipp and the surety company to the railway company under the bond if the railway company is to be held answerable because of Hipp's failure to pay Walker the amount he agreed to pay him.

Nor, in our opinion, did the settlement transaction alter the position of the surety company or vary its obligation to the railway company, and for such reason operate to release it from the bond. It is an alteration, not the attempted performance, of terms of a contract which, unless the surety consents, discharges him. What Hipp did in the settlement was in attempted performance of the bond. He recognized what the bond itself plainly expressed, that as between himself and the railway company his duty was to pay the just amount of Walker's claim. Such was equally the obligation under the bond of the surety company. He paid it in part, and by his notes agreed to pay the balance of it. His notes but expressed in another form the obligation of the bond. They were given to carry out what the bond imposed upon Hipp and his surety, what under the bond it was their duty to the railway company to do. The situation of the surety company as respects the railway company was not altered by the transaction; except, to the extent that its obligation was reduced by the amount Hipp paid Walker in cash, it reaped a benefit from it. Hipp's

giving of his notes was but a mode adopted by him in attempted performance of the bond. The attempt of a principal to perform his contract clearly could not of itself operate to release a surety upon it.

Furthermore, Hipp's consummation of the settlement was his independent act. It does not appear that the railway company exercised any control over him in his making it.

On the record here, the surety company was in no different situation after the settlement from that in which it stood before, except that its obligation was reduced. It is in no position here to complain of the settlement, or to invoke it as a ground for being released from the bond.

It is urged that the surety company is not answerable under the bond for the consequences of the railway company's fraud upon Walker. If that were the whole of the question, the proposition would be sound. But it overlooks that the basis of any liability to Walker on the railway company's part, is, primarily, Hipp's default in the payment of Walker's claim, which, under the bond, it was his duty to pay in its just amount, a duty to which the surety company was equally bound. But for Hipp's default, Walker would have no action against the railway company. The reason for which the railway company may be held answerable to Walker on account of Hipp's default, may be regarded as immaterial. Any judgment against it in Walker's favor will proceed from Hipp's default, and its result will be but to require that it make good to Walker the amount of that default. It was Hipp's duty in the first place, under the bond, to pay the amount to which Walker was justly entitled on account of his injury, and it was the surety company's duty under the bond to see that such amount was paid him. Hipp, in recognition that this was his obligation under the bond, undertook to pay it, but did not complete the payment. If in consequence of Hipp's failure to complete the payment, the railway company is to be required to make good his default, Hipp and the surety company should not be permitted to say, "We satisfied Walker's original claim by his acceptance of Hipp's notes, which also satisfied his claim against the railway company; but Hipp was at liberty to default in the payment of his notes, though it amounted to an absolute failure on his part to do what under the bond he ought to have done, and if the railway company, because of having given Hipp a good name in the settlement with Walker, is, under the law, due to protect Walker from his default, we owe it no protection under our bond."

Merely satisfying Walker's original claim did not end the obligation of the bond. That obligation, to have any virtue, clearly extended to the protection of the railway company against any lawful demand Walker might assert against it for a failure on Hipp's

part to do what in the satisfaction of the claim he obligated himself to do and therefore should have done. That is the right of this case, and therefore is the law of the case. It is idle to say that the railway company has been fully protected under the bond against Walker's claim, when it may be answerable to Walker for what Hipp, the principal in the bond, was in duty bound to do, and in the settlement of the claim obligated himself to do, in the fulfilment, as he himself recognized, of his obligation to the railway company under the bond.

What will but amount to the performance of Hipp's obligation, ought not to be imposed solely upon the railway company. The obligation was primarily that of Hipp and the surety company in virtue of their bond, and they should be held to its performance. As the case stands here, if the railway company is answerable to Walker for the unpaid amount of the settlement, Hipp and the surety company are on their bond answerable to the railway company in the same amount.

In the state of the surety company's pleading it is unnecessary to discuss the effect upon its rights of the payment by the railway company after the settlement of the amount due by it to Hipp. There was no pleading that the railway company was under any duty to the surety company to withhold such payment, or that the payment was in any sense in violation of its rights. It is merely averred that the railway company, at the time of the settlement, was indebted to Hipp in an amount in excess of that Walker agreed to accept, and thereafter, without the surety company's knowledge or consent, but with the knowledge that Hipp had not paid his notes to Walker, paid such amount to Hipp. This was insufficient to charge the railway company with the breach of any duty to the surety company.

The judgment of the Court of Civil Appeals reversing the judgment of the District Court in part and remanding the case as between Walker and the railway company is affirmed, but its judgment in other respects, with that of the District Court, is reversed; and the case is remanded to the District Court for further trial in accordance with this opinion.

(Associate Justice Greenwood took no part in the decision of the case.)

*Affirmed in part and in part reversed and remanded.*