## HUTCHINGS v. TAKENS.

1. FRAUD—ACTION—DAMAGES.

Fact that plaintiff, seeking damages for fraud practiced upon him incident to effecting a settlement treated it as subsisting and, in effect, affirmed it, would not bar action to recover damages to extent of clearing the transaction of established fraud and deceit.

2. SAME—INSTRUCTIONS—REQUESTS TO CHARGE—MEASURE OF DAMAGES.

In action to recover damages for fraud alleged to have been practiced upon plaintiff incident to settlement of a business transaction between him and the several defendants, latter *held*, in no position to complain of instruction of measure of damages as given where it followed the idea of measure of damages put forward by defendants in their request to charge.

3. SAME—DAMAGES—COMPROMISE AND SETTLEMENT—EVIDENCE—INSTRUCTIONS—REQUEST TO CHARGE.

Damages awarded by jury in action for fraud alleged to have been practiced upon plaintiff incident to effecting a settlement of a business transaction involving reorganization of a corporation in financial difficulties *held*, within the evidence under both instruction given as to measure of damages and request to charge thereupon.

4. APPEAL AND ERROR—FRAUD—VERDICTS—WEIGHT OF EVIDENCE.

Jury's verdict for plaintiff in action for fraud alleged to have been practiced upon him incident to effecting settlement of his rights in reorganization of financially embarrassed corporation, *held*, to find support in evidence and not so clearly against the weight thereof as to call for reversal.

5. SAME—ADMISSION OF EVIDENCE.

Rulings of court on admission, rejection and striking out of testimony in action for damages for fraud incident to settlement agreement releasing plaintiff's rights in reorganization of a financially embarrassed corporation *held*, not to constitute reversible error.

6. SAME—FAILURE TO GIVE REQUESTS TO CHARGE—INSTRUCTIONS.

   Failure of trial court to give various requested instructions which were either of an argumentative nature or in amplification of instructions given *held,* not reversible error where charge given sufficiently covered the issues to be submitted to the jury.

7. SAME—REFUSAL TO INCREASE DAMAGES IN ACTION FOR FRAUD.

   In action for fraud alleged to have been practiced upon plaintiff incident to defendants' procurement of his release of rights in the reorganization of a financially embarrassed corporation, refusal of trial court to grant plaintiff's motion for increase of damages is affirmed under record presented.

Appeal from Superior Court of Grand Rapids; Taylor (Thaddeus B.), J. Submitted April 7, 1938. (Docket No. 52, Calendar No. 39,950.) Decided December 22, 1938. Rehearing denied February 1, 1939.

Action by Paul M. Hutchings against Gerrit B. Takens and others for damages for fraud and deceit. Verdict and judgment for plaintiff. Defendants appeal. Plaintiff cross-appeals. Affirmed.

*Dean S. Face,* for plaintiff.

*Warner, Norcross & Judd, Knappen, Uhl, Bryant & Snow* and *Joseph R. Gillard,* for defendants.

WIEST, C. J. This is an action to recover damages for fraud and deceit, alleged to have been perpetrated by defendants, acting in concert, by means of which plaintiff was induced to accept, in satisfaction of any and all claims due, or to become due him by virtue of his services, hereinafter mentioned, contracts or undertakings connected with his efforts, whether for cash, expenses, commissions, salary or otherwise, and in full consideration of the termination of any and all existing contracts or agreements with reference to the foregoing, the sum of $7,500.

The Wolverine Bumper & Specialty Company of Grand Rapids, at one time a very successful manufacturing company, was in financial difficulties in the fall of 1933. The business of the company had decreased and numerous creditors were after their pay. Among other creditors the company owed Albert P. Crell upward of $80,000. Mr. Crell was business manager of the company. At that stage of the corporate affairs plaintiff was offered and accepted an option, under which he might perfect a reorganization of the company or the formation of a new one, and he claims he had accomplished such purpose on November 23, 1934, in the organization of the Michigan Bumper Corporation, when defendants, by concert of action, made false and fraudulent representations which induced him to surrender his rights under the option and forego great pecuniary gain, for the sum of $7,500. He claims he later learned the truth about the matter and then, without returning the money, he brought this suit to recover damages and, upon trial by jury, had verdict and judgment thereon for $42,343.75.

Defendants' motion for judgment in their favor or for a new trial was denied as was also plaintiff's motion for an increase of the damages.

Defendants as well as plaintiff appeal.

We shall not undertake to state the various ramifications of the case as it would be long and of no benefit to the profession and merely fill our reports with unnecessary recitals.

Counsel for defendants take 22 printed pages in stating the facts, and counsel for plaintiff takes 18 pages in supplementing that of defendants.

The declaration charged fraud and deceit as follows:

"That on November 23, 1934, said defendant John Crell requested plaintiff to come to the office of Mr.

Crell's attorney. This plaintiff went to said office and the said defendants were all then and there present, and it was then and there stated and represented to this plaintiff by the said John Crell in the presence of and with the full knowledge and acquiescence of the other defendants, that the said Albert P. Crell and John Crell had learned various facts which made it clear that it was impossible to go ahead with the proposed organization of the proposed Michigan Bumper Corporation; that the proceedings which had taken place in the said circuit court and the proceedings which had been taken in bankruptcy, and the attitude of the creditors, and the various other facts claimed to be known by said defendants, had created such obstacles that the matter would all have to be dropped, and stated and represented that defendant Takens and defendant Wagenaar and the Securities Exchange Corporation were entirely and finally withdrawing from the whole enterprise and that Albert P. Crell was guaranteeing them against losses not to exceed $10,000; that the subscriptions to stock which had been taken would all be sent back to the subscribers and cancelled; that the said Albert P. Crell was still determined that the creditors of the Wolverine Bumper & Specialty Company should be paid 100 cents on the dollar; that he had already arranged at Detroit to borrow personally the necessary money to pay off said creditors and take over the business, and that the said Albert P. Crell and John Crell were leaving for Detroit early the following morning for that purpose; and that because of the action already taken by said defendants, the plaintiff was left without any legal rights or relief whatever, but they were willing to pay him a nominal amount for the very difficult and valuable service which he had performed, and proposed that the said Albert P. Crell would agree to pay him $7,500 to terminate his contract with the said Albert P. Crell, and to further induce and persuade this plaintiff to agree to such

proposal, said Albert P. Crell and John Crell then and there instructed their attorney to prepare an agreement between defendant Takens, defendant Wagenaar, Securities Exchange Corporation, Albert P. Crell and Wolverine Bumper & Specialty Company, wholly and finally terminating all agreements and contracts regarding said enterprise and said attorney then and there dictated and prepared such an agreement in writing, and the said defendants represented and pretended that said agreement was genuine and *bona fide,* and that all contracts and business relations between them were thereby terminated, and that said enterprise for organizing said Michigan Bumper Corporation had been abandoned, and said defendants, and each of them, then and there wholly failed and omitted to make known or disclose to the plaintiff any other facts or circumstances.''

Defendants denied the alleged fraud and deceit and claimed the settlement was a business transaction, every feature of which was fully understood by plaintiff and contend that, without rescission and return or tender of the consideration received, plaintiff cannot recover damages in this action at law.

Plaintiff, by this action, has elected to treat the settlement as subsisting and in effect affirms it, but that does not bar this action to recover damages to the extent of clearing the transaction of established fraud and deceit.

Defendants allege error in the following instruction to the jury upon the measure of damages:

''If the plaintiff is entitled to recover, it will be for such sum as will fairly represent the value of the property rights that he surrendered on November 23d, less the $7,500 that he may have received.

''If he had so far completed his contract with Takens and Wagenaar that he was entitled to 37,500 shares of stock to be held in escrow, then you would

have to determine what was the fair market value of this on November 23d.

"In determining the fair market value, as you do, you take into consideration the fact that previous to this similar shares were being sold, or subscriptions, similar shares were being taken at one dollar per share. These shares were not to be delivered until such time as the Michigan securities commission should authorize their delivery. Neither the plaintiff nor the defendants on November 23d knew when that delivery might be made.

"What was Mr. Hutchings' interest; what were his property rights in those shares, if he had any, on November 23d? What were they worth? Were they worth less than one dollar or were they worth more than one dollar per share? That is what you will have to determine.

"Also he claims that on this same day he was entitled, under his contract, to 37,500 option warrants, and that each one of those option warrants would give him or the holder the right to purchase one share of stock of this corporation by paying the sum of one dollar. What were those option warrants worth on that day, that would be delivered to him sometime in the future? If the stocks were being sold at that time or in the future for one dollar per share, and that it was necessary to take one dollar with each option warrant and place with that option warrant in order to buy a share of stock, what was each option warrant worth? Was it worth anything?"

Defendants contend that such instruction permitted damages as upon rescission and did not give the measure of damages for fraud and deceit.

Defendants requested the court to instruct the jury as follows:

"I charge you, members of the jury, that if you first find by a preponderance of the evidence that the settlement contracts of November 23 and Novem-

ber 24, 1934, were induced by the materially fraudulent misrepresentations of any one of the defendants and that the defendants were acting in concert, and that if you further find by a preponderance of the evidence that the plaintiff parted with valid and enforceable and therefore valuable rights when he signed the settlement agreements, then before you can render any verdict for the plaintiff, you must further find by a preponderance of the evidence that the value of the rights which plaintiff parted with by signing the settlement agreements was in excess of $7,500, and if this be so, then your verdict can only be for whatever value you find those rights to have been worth on November 23, 1934, less the $7,500 which the plaintiff received for signing the settlement agreements. In other words, if you find that the value on November 23, 1934, of the rights which plaintiff parted with by signing the settlement agreements was $7,500 or less, then your verdict must be for the defendants of no cause of action; but if you find that the value of those rights on November 23, 1934, was in excess of $7,500, then your verdict for the plaintiff must be only in the amount of such excess."

There was more to the request, in the nature of argument, but we have stated enough to show that the court followed the idea of the measure of damages put forward by defendants, and they are now in no position to say the court should have informed the jury that plaintiff's damages were limited to the fraud and not upon deprivation of accrued contract rights.

Defendants claim the damages awarded are grossly excessive and unreasonable.

The award for damages, found by the jury, was within the evidence under the above mentioned instruction and request, and we find no good reason for disturbing the same.

The finding of fraud, in that plaintiff had accomplished, in effect, a reorganization of the company when defendants, whose interests stood to pay him, desired to get rid of the contract rights and obligations and to avail themselves of the result of his labors in accomplishment of such purpose, made fraudulent representations, deceitful in intent and calculated to induce plaintiff to forego his earned compensation for a pittance thereof, finds support in the evidence, and cannot be found so clearly against the weight thereof as to call for reversal.

Error is claimed in several rulings of the court on the admission, rejection and striking out of testimony.

Plaintiff claimed accomplishment of reorganization of the company under the name of the Michigan Bumper Corporation on November 23, 1934, that being the date of the settlement agreement.

The court struck out the testimony of John Crell to the effect that the Michigan Bumper Corporation had been a dummy corporation up until March 1, 1935, and excluded testimony of another witness as to oral communications with the Michigan securities commission relative to the application of the Michigan Bumper Corporation for acceptance of its stock for filing by the Michigan securities commission, the purpose being to show that such oral statements caused delay in operation of the approval by the commission on November 16, 1934, of sale of Michigan Bumper Corporation stock to the public.

The mentioned rulings and others have been examined and found not to be of sufficient moment to constitute reversible error.

Counsel for defendants requested the court to instruct the jury in accord with 16 requests. These requests, in connection with the instructions given,

have been examined, many of them found to be argumentative in nature and some others only in amplification of instructions given and we think the instructions given the jury by the court sufficiently covered the issues to be submitted to the jury.

Refusal of the trial judge to grant plaintiff's motion to increase the damages is affirmed.

We find no reversible error. The judgment is affirmed, with costs to plaintiff.

BUTZEL, BUSHNELL, SHARPE, POTTER, CHANDLER, and NORTH, JJ., concurred. MCALLISTER, J., did not sit.