Tart, J.
This is an action at law to recover from the defendant damages alleged to have resulted from fraudulent representations by the defendant which induced the plaintiff to release a claim. The released claim was for personal injuries to the plaintiff alleged to have been proximately caused by the negligence of a person insured by the defendant against liability for injuries so caused. The person so insured, herein referred to as the insured, has not been made a party to the action.
In Picklesimer v. Baltimore & Ohio Rd. Co., 84 Ohio App., 11, 84 N. E. (2d), 767, the Court of Appeals held that an injured party could recover in an action at law damages alleged to have resulted from fraudulent representations by a railroad which induced such injured party to release his claim against such railroad for negligently causing personal injuries. However, that holding was reversed by the decision of this court in Picklesimer v. Baltimore & Ohio Rd. Co., 151 Ohio St., 1, 84 N. E. (2d), 214, which holds that any damages resulting from such fraudulent representations will necessarily represent merely damages on account of such personal injuries, and that the injured party in such an instance can maintain no action of any kind to recover damages on account of those personal injuries until the release has been set aside.
Although the instant action is not, as was the Picklesimer ease, against the one claimed to have negligently caused the personal injuries but is against his insurer, it is apparent that the damages sought for the defendant’s fraud would necessarily represent in substance damages for personal injuries to the same extent that the damages claimed for fraud in the Picklesimer case would have represented damages for personal injuries. Cf. Greenwalt v. Goodyear Tire & Rubber Co., 164 Ohio St., 1, 8, 128 N. E. (2d), 116. Hence, our decision in the *497 Picklesimer case apparently requires the conclusion that no such action can be maintained as long as the release has not been set aside. If the plaintiff in the instant case was induced by the fraudulent representations of defendant insurer to release her claim for personal injuries, she would have the same right against the insured to have that release set aside as though such fraudulent representations had been made by the insured. In other words, in relying upon that release, the insured could no more escape the consequences of any fraudulent representations, that were made on his behalf by his insurer in securing the release of claims against him and that induced plaintiff to execute and deliver such release, than he could escape the consequences of such fraudulent representations by himself. Therefore, in order to provide protection against any fraud in inducing the execution of a release of a claim for personal injuries, it is no more necessary to permit an action at law for fraud in the instant case than it was in the Picklesimer case.
Apparently the earliest reported case considering the question whether an action for deceit, based upon fraudulent representations inducing execution of a release, can be maintained, without setting aside the release either by mutual agreement or having it set aside by a court decree and in the absence of special circumstances indicating that such rescission of the release would not fully protect the releasor, is Edwards v. Owen, 15 Ohio, 500 (1846), where the court was equally divided on that question. In subsequent considerations of that question, the Edwards case has apparently not been noticed except by the Court of Appeals in the Picklesimer case.
In 1881, the Court of Appeals of New York in a dictum approved the maintenance of such an action (Gould v. Cayuga County Natl. Bank, 86 N. Y., 75, 85), and in 1885 it decided that such an action could be maintained. Gould v. Cayuga County Natl. Bank of Auburn, 99 N. Y., 333, 2 N. E., 16. Likewise, in 1887, after referring to the foregoing 1881 New York case, the Supreme Court of Indiana promulgated a similar dictum (Home Ins. Co. v. Howard, 111 Ind., 544, 13 N. E., 103) which was followed by its decision in 1891 that such an action could be maintained. Michigan Mutual Life Ins. Co. v. Naugle, 130 Ind., 79, 29 N. E., 393. Since then, there have been a sub *498 stantial number of decisions in both states generally approving the maintenance of such an action. Urtz, Admx., v. New York Central & Hudson River Rd. Co., 202 N. Y., 170, 95 N. E., 711 (1911); Goldsmith v. National Container Corp., 287 N. Y., 438, 40 N. E. (2d), 242 (1942); Inman v. Merchants Mutual Casualty Co., 190 Misc., 720, 74 N. Y. Supp. (2d), 87 (1947); Russo v. Sofia Bros., Inc., 44 F. Supp., 779 (D. C., S. D. N. Y., 1942); Wabash Valley Protective Union v. James, 8 Ind. App., 449, 35 N. E., 919 (1893); Travelers’ Protective Assn. of America v. Smith, 101 N. E., 817 (Ind., 1913); Sovereign Camp of Woodmen of the World v. Latham, 59 Ind. App., 290, 107 N. E., 749 (1915); Bailey v. London Guarantee & Accident Co., 72 Ind. App., 84, 121 N. E., 128 (1918); Rochester Bridge Co. v. McNeill, 188 Ind., 432, 122 N. E., 662 (1919); Southern Ry. Co. v. Jaynes, 86 Ind. App., 451, 140 N. E., 556 (1923); Indiana Ins. Co. v. Handlon, 216 Ind., 442, 24 N. E. (2d), 1003 (1940); Automobile Underwriters, Inc., v. Rich, 222 Ind., 384, 53 N. E. (2d), 775 (1944). But cf. Ross v. Preston et al., Admrs., 292 N. Y., 433, 55 N. E. (2d), 490 (1944).
In Lomax v. Southwest Missouri Electric Ry. Co., 106 Mo. App., 551, 81 S. W., 225 (1904), where maintenance of such an action was disapproved, it.is said in the opinion:
“The petition is thought to be without a precedent. It is-noticeable that it is not an action to set aside a release obtained by fraud, and for a fiTiding and judgment for plaintiff for the damages he had sustained by reason of the negligence of the defendant, but is for damages alleged to have been sustained for the deceit in obtaining the release itself. * * #
“* * * If the allegations of the petition are true, and for the purpose of the demurrer they must be so taken, the release is void both in law and equity, and in executing the release the plaintiff parted with nothing. His original cause of action which was the property, if any, in dispute, remains to him. The defendant is still liable to him for the damages he sustained, if any, notwithstanding the fraudulent release. Nothing further need be said about the cause.”
Maintenance of such an action has apparently been approved by other courts. Brown v. Ocean Accident & Guarantee Corp., 153 Wis., 196, 140 N. W., 1112 (1913 — relying on Urtz v. N. Y. *499 Central & H. R. Rd. Co., supra [202 N. Y., 170], and Gould v. Cayuga County Natl. Bank, supra [99 N. Y., 333]); Hutchings v. Takens, 287 Mich., 96, 282 N. W., 915 (1938 — citing no authorities) ; Pacific Mutual Life Ins. Co. of California v. Rhame, 32 F. Supp., 59, 65 (D. C., E. D. S. C., 1940 — citing Corpus Juris); Mutual Savings Life Ins. Co. v. Osborne, 245 Ala., 15, 15 So. (2d), 713 (1943 — citing Corpus Juris); Kordis v. Auto Owners Ins. Co., 311 Mich., 247, 18 N. W. (2d), 811 (1945 — citing Hutchings v. Takens, supra [287 Mich., 96]); Ware v. State Farm Mutual Automobile Ins. Co., 181 Kan., 291, 311 P. (2d), 316 (1957 — citing cases from Michigan, New York, Indiana and Wisconsin). See Mlnasek v. Libera, 83 Minn., 288, 86 N. W., 100 (1901); Swan v. Great Northern Ry. Co., 40 N. D,. 258, 168 N. W., 657, L. R. A. 1918F, 1063 (dictum, no authority cited); Desmarais, Admx., v. People’s Gas Light Co., 79 N. H., 195, 107 A., 491 (1919 — citing with approval Urtz v. N. Y. Central & H. R. Rd. Co., supra [202 N. Y., 170], and with disapproval Whitman v. Seaboard Air Line Ry., infra); Metropolitan Paving Co. v. Brown-Crummer Investment Co., 309 Mo., 638, 274 S. W., 815 (1925 — citing Appellate Division opinion in Urtz v. N. Y. Central & H. R. Rd. Co., supra [202 N. Y., 170] — although possibly distinguishable from Lomax v. Southwest Missouri Electric Ry. Co., supra [106 Mo. App., 551], that case was not noticed); Pattison v. Highway Ins. Underwriters, 278 S. W. (2d), 207 (Tex. Civ. App., 1955 — citing Automobile Underwriters, Inc., v. Rich, supra [222 Ind., 384], but not noticing decision of Supreme Court of Texas in Wichita Falls & S. Rd. Co., v. Durham, infra).
On the other hand, maintenance of such an action has also been disapproved by other courts. Taylor v. Hopper, 207 Cal., 102, 276 P., 990 (1929); Wichita Falls & Southern Rd. Co. v. Durham, 132 Tex., 143, 120 S. W. (2d), 803, 120 A. L. R., 1497 (1938); Picklesimer v. B. & O. Rd. Co., supra (151 Ohio St., 1); Linard v. Pennsylvania R. Co., 181 F. (2d), 342 (C. C. A. 6, Ohio, 1950); Davis v. Hargett, 244 N. C., 157, 92 S. E. (2d), 782 (1956). See Whitman v. Seaboard Air Line Ry., 107 S. C., 200, 92 S. E., 861, L. R. A. 1917F, 717. So far as it approved maintenance of such an action, Provident Life & Accident Ins. Co. v. Bertman, 151 F. (2d), 1001 (C. C. A. 6, Ohio, 1945), prob *500 ably became obsolete when this court decided Picklesimer v. B. & O. Rd. Co., supra (151 Ohio St., 1). See Linard v. Pennsylvania Rd. Co., supra (181 F. [2d], 342).
Maintenance of such an action is approved in 34 Cyc., 1067, Section 8a (citing an Indiana appellate case; tbe other case cited is not in point). See also 53 Corpus Juris, 1229, Section 47 (citing in addition another Indiana appellate case and the Appellate Division opinion in Urtz v. N. Y. Central & H. R. Rd. Co., supra [202 N. Y., 170]), and 76 Corpus Juris Secundum, 662, Section 34 (citing Corpus Juris, another Indiana appellate case and cases which had cited Corpus Juris). In 45 American Jurisprudence, 714, Section 53, it is indicated that some courts “without expressly passing on the question” have apparently said that such an action might be maintained; and a few of the cases on this question are referred to in the annotation at 134 A. L. R., 6, at 75 et seq. Immel, The Requirement of Restoration in the Avoidance of Releases of Tort Claims (1956), 31 Notre Dame Lawyer, 629, at 673 to 680, suggests and discusses the difficulties involved in recognizing any such action.
If a release of a tort claim against a tort-feasor has been induced by fraudulent representations of someone acting on behalf of such tort-feasor, the releasor may have equitable relief to set aside the release and thereby be enabled to enforce that tort claim. Dice v. Akron, Canton & Youngstown Rd. Co., 155 Ohio St., 185, 98 N. E. (2d), 301 (1951); Flynn v. Sharon Steel Corp., 142 Ohio St., 145, 50 N. E. (2d), 319 (1943); Perry v. M. O’Neil & Co., 78 Ohio St., 200, 85 N. E., 41 (1908); McCuskey v. Budnick, 165 Ohio St., 533, 138 N. E. (2d), 386 (1956). Hence, there will ordinarily be an absence of the damage essential to existence in the plaintiff of any cause of action for deceit ©n account of such fraudulent representations. See 5 Williston on Contracts (Rev. Ed.), 4266, Section 1524. Of. Graham v. Morgan, 129 F. Supp., 199 (D. C., N. D., Okla., 1955 — where releasee became bankrupt before fraud discovered). Unless there has been some fraudulent representation as to the value of the consideration paid for the release or the value of what the releasor was to receive (see Galveston, Harrisburg & San Antonio Ry. Co. v. Walker, 110 Tex., 286, 219 S. W., 815 [1920 — releasor, induced to accept notes in settlement of tort claim on representa *501 tion by tort-feasor that maker of such notes was solvent, allowed to recover in action for deceit for difference between face amount of notes and their value]), and there was not in the instant case, there would be no necessity for an action of deceit in order to give the plaintiff releasor “the difference between the actual value of what the plaintiff received and the value which” the amount received “would have had if” the amount received “had been as represented.” See Immel, supra (31 Notre Dame Lawyer, 629, 674). Cf. 5 Williston on Contracts (Rev. Ed.), 4266, Section 1524. Hence, in a case such as the instant case, there would appear to be no reasonable basis for an action of deceit.
The opinions which give any reason for recognizing such an action treat it like an action for deceit where a sale or purchase of personal or real property or a contract therefor has been induced by fraud or where the execution of some other contract has been induced by fraud, and the same treatment is indicated by the kind of authorities cited in opinions giving no reason.
There is usually no analogy between the situation of one induced by fraud to release a tort claim and one induced by fraud to buy something. Obviously, in a case like the instant case, the releasor of a tort claim buys nothing, although he may receive something, usually money or its equivalent, for what he relinquishes. He does give up something (%. e., his tort claim), as a seller gives up what he sells. Thus, on cursory consideration, the release of a tort claim might appear to be analogous to a sale of something. However, where there has been a sale of something, possession of that something has usually been relinquished by the seller. Even where use of the sold something has not made it less valuable, the seller will usually want money for it as he did when he made the sale. If he takes it back, he has to sell it to get that money. Each change of possession of that something will ordinarily involve expense or inconvenience. On the other hand, the releasor has nothing to repossess on rescission of the release; and such rescission revests him with the same claim for money that he had before, not something he must resell to get that money. In reality, the releasor does not sell anything even of an intangible nature. In effect, the releasor has merely agreed for a consideration not to enforce his tort claim.
*502 To allow the releasor to recover more than anyone agreed to give for his tort claim, because the releasor was induced by fraud to believe that claim was worth less than its value, is to permit the releasor in effect to enforce part of the tort claim that he agreed for a consideration not to enforce. How can he logically affirm an agreement not to sue for his personal in- . juries (cases allowing recovery in deceit for fraud inducing release of a tort claim require such affirmance as a necessary basis for such recovery) and yet recover something on account of those personal injuries? If he desires to do that, he must set aside, not affirm, his agreement not to sue for those personal injuries. Picklesimer v. Baltimore & Ohio Rd. Co., supra (151 Ohio St., 1); Rice v. Akron, Canton & Youngstown Rd. Co., supra (155 Ohio St., 185); Perry v. M. O’Neill 7 Co., supra (78 Ohio St., 200). Even the courts which permit an action for deceit in a case such as the instant one have recognized that such an action could not logically be approved if it were an action to recover for the personal injuries. For example, in Gould v. Cayuga County Natl. Bank, supra (99 N. Y., 333), it is said in the opinion:
“* * * we * # * turn to * * * the argument, that the action is an attempt to recover under the mask of damages the extinguished balance of the original obligation. # * # There having been no rescission of the compromise agreement, that must stand, and it discharges forever the original contract and extinguishes all right to any balance due upon it. * * * the question of damages for the jury * * * respects the fair value of the disputed claim as the subject of a reasonable and just compromise, or of a reasonable sale by the creditor to the debtor. It is the excess of that value * * * over the value fixed upon * * * facts, fraudulently asserted, which constitutes the plaintiff’s actual loss from the fraud.”
Thus, in order to avoid the illogical holding that a releasor can enforce a released claim without setting aside a release, the New York and Indiana courts adopted a rule of damages that requires the jury to determine “the fair value of the disputed claim as the subject of a reasonable and just compromise”; and damages are then determined by deducting what was paid for the release from the amount of that “fair value,” not from *503 the amount that would have been recovered on the original claim. However, those courts have also held that, if the releasor could not have recovered anything on the original disputed claim, then even that “fair value” would be “of a nature too speculative and wagering to be recognized by the law” in an action of deceit; and hence no recovery is allowed unless the releasor establishes to the satisfaction of the jury that he could have actually recovered something on the disputed claim if he had not released it. Urtz v. N. Y. Central & H. R. Rd. Co., supra (202 N. Y., 170); Rochester Bridge Co. v. McNeill, supra (188 Ind., 432).
Certainly, any determination of “the fair value of the disputed claim as the subject of a reasonable and just compromise” calls for the exercise of a special knowledge and experience that is not only far beyond the experience, knowledge and comprehension of laymen but even of most judges and members of the Bar. Hence, under the New York-Indiana rule of damages, it would probably be proper if not essential (see Stacey v. Carnegie-Illinois Steel Corp., 156 Ohio St., 205, 101 N. E. [2d], 897) to have the testimony of experts as to such value. As everyone knows, when experts testify on value, there is frequently a wide dollar range presented for the jury’s consideration.
To us, it appears almost absurd to foist upon a jury such hopelessly complicated problems with respect to the ascertainment of damages as would be involved by our recognition of the right of plaintiff in the instant case to maintain an action for deceit against defendant, unless it is reasonably necessary to do so in the administration of justice. Our prior decisions have recognized other adequate remedies that will, if she is entitled to it, provide plaintiff with all the relief she is seeking. If, as she alleges, defendant did fraudulently induce her to release her tort claim against its insured, she can in equity set aside that release; and, after she has done that, she can assert her original cause of action against defendant’s insured. Dice v. Akron, Canton & Youngstown Rd. Co., supra (155 Ohio St., 185); Perry v. M. O’Neill & Co., supra (78 Ohio St., 200).
It may be that plaintiff’s release was not induced by any fraud. If it was not, neither defendant nor its insured should *504 be required to go to all the trouble and expense of preparing for and trying an action to recover in effect on account of the damages for which that release was given, as they would be required to do if the demurrer to plaintiff’s petition in the instant case should be overruled.
Although we do not intend to express any opinion thereon, it may be in the instant case that, since plaintiff received nothing although there was a legal consideration for plaintiff’s release (i. e., the payment to Graree on account of damage to his car), plaintiff would not be required to tender back anything before endeavoring in equity to rescind and set aside her release. However, if we recognize a cause of action such as plaintiff seeks to assert, we would, in order to be consistent, have to recognize that a releasor who had been paid a substantial consideration for his release could, even without any tender back of that consideration, maintain an action against either the releasee or his insurer to recover for damages on account of fraudulent representations inducing the execution of such release. This is the usual holding in the cases approving maintenance of an action at law for damages caused by fraudulent representations of such insurer inducing execution of a release. Such a holding would appear to be irreconcilable with the decisions of this court, which have consistently held that a releasor of an unliquidated claim cannot recover anything on account of that claim without first avoiding the release; and that, except where, unlike in the instant case, the release is void, such releasor cannot undertake to avoid that release without first tendering back the consideration received therefor. Picklesimer v. B. & O. Bd. Co., supra (151 Ohio St., 1); Manhattan Life Ins. Co. v. Burke, 69 Ohio St., 294, 70 N. E., 74, 100 Am. St. Rep., 666; Block v. Block, 165 Ohio St., 365, 135 N. E. (2d), 857. Cf. St. Louis & S. F. R. Co. v. Richards, 23 Okla., 256, 102 P., 92, 23 L. R. A. (N. S.), 1032 (1909), and cases cited reaching a contrary result.
The sound reasons for our holdings in those cases are well demonstrated by what is said in the very opinion which set forth the dictum that is the genesis of most of the authorities which support plaintiff’s contention. Thus, it is said in Gould v. Cayuga County Natl. Bank, supra, 86 (86 N. Y., 75), with *505 respect to a suppositious dispute as to whether B had paid a $3,000 debt to A’s deceased agent:
1< * * * p> * * * claims that he paid the agent the whole debt. A disputes this and they finally agree to compromise the dispute, B paying $500. Afterwards A * # * claims that he was induced, by fraud, to enter into the compromise. * * * If A can maintain his suit without first returning the $500, he will have all the game in his own hands. If he wins the suit he will retain the $500 and get $500 more. If he loses the suit in consequence of proof that the whole debt had been paid to his agent [or if the jury determines under the New Yorlc-Indiana rule of damages that his claim for settlement purposes was worth less than $500] he will still have the $500. He will thus in effect hold B to the compromise but himself be released. Such inequality and injustice cannot be tolerated by correct principles of law.” (Emphasis added.)
As stated by Ranney, J., in White v. Brocaw, 14 Ohio St., 339, at page 346:
“If there is any one thing which the law favors above another, it is the prevention of litigation, by the compromise and settlement of controversies.”
We fail to see how overruling defendant’s demurrer in the instant case could do anything but run counter to such a policy.
Our conclusion is that the judgment of the Court of Appeals must be reversed and that of the Common Pleas Court affirmed.

J udgment»reversed.

Weygandt, C. J., Zimmerman, Stewart, Matthias and Herbert, JJ., concur.
Bell, J., dissents.